Case No. 18-56360

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

ART TOBIAS,

Plaintiff-Appellee,

v.

MICHAEL ARTEAGA, Detective No. 32722; et al.,

Defendants-Appellants,

and

CITY OF LOS ANGELES; et al.,

Defendants.

---

On Appeal from the United States District Court,
Central District of California,
Case No. 17-cv-01076-DSF-AS, Hon. Dale S. Fischer

---

## APPELLANTS' OPENING BRIEF

---

Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
ORBACH HUFF SUAREZ & HENDERSON
1901 Harrison Street, Suite 1630
Oakland, CA  94612
Telephone:   (510) 999-7908
Facsimile:   (510) 999-7918

Attorney for Defendants-Appellants
DETECTIVES MICHAEL ARTEAGA, JEFF
CORTINA, JOHN MOTTO and JULIAN PERE

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................1

II.     JURISDICTIONAL STATEMENT .......................................2

III.    ISSUES PRESENTED ..........................................................3

IV.     STATEMENT OF THE CASE ..............................................4

        A.      The Castaneda Murder ............................................5

        B.      Tobias' Interrogation, Part I ...................................8

        C.      Tobias' Passing Reference of an Attorney...............9

        D.      Tobias' Mother Identifies Him as the Shooter in the Video ................9

        E.      Tobias' Interrogation, Part II................................10

        F.      Relevant Criminal Proceedings............................11

V.      SUMMARY OF THE ARGUMENT .....................................12

VI.     STANDARD OF REVIEW...................................................15

VII.    ARGUMENT.........................................................................16

        A.      A Clearly Established Right is Not One of High Generality ..............16

        B.      The Absence of Any Precedent as to Whether Tobias' Passing
                Statement Constituted an Unequivocal Request for Counsel
                Confirms that the Issue Was Not Clearly Established ........................22

        C.      Existing Precedent Does Not Clearly Establish What
                Combination of Approved and Lawful Interrogation Tactics
                Constitute a Coercive Interrogation ....................................27

VIII.   CONCLUSION......................................................................34

# TABLE OF CONTENTS (continued)

**Page**

STATEMENT OF RELATED CASES ................................................................... 35

CERTIFICATE OF COMPLIANCE ..................................................................... 36

CERTIFICATE OF SERVICE .............................................................................. 37

# TABLE OF AUTHORITIES

Page(s)

*Amaya-Ruiz v. Stewart*,
121 F.3d 486 (9th Cir.1997) ............................................................. 29

*Ashcroft v. al-kidd*,
563 U.S. 731 (2011) ....................................................... 17, 20, 23, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 15

*Behrens v. Pelletier*,
516 U.S. 299 (1996) ......................................................................... 16

*Brosseau v. Haugen*,
543 U.S. 194 (2004) (per curiam) .................................................... 14

*Carroll v. Carman*,
135 S. Ct. 348 (2014) (per curiam) .................................................. 13

*Chavez v. Martinez*,
538 U.S. 760 (2003) ......................................................................... 28

*City and County of San Francisco v. Sheehan*,
135 S. Ct. 1765 (2015) ............................................................... 13-14

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019) ...................................... 2, 3, 4, 13, 14, 17, 19, 20, 22, 34

*Clark v. Murphy*,
331 F.3d 1062 (9th Cir. 2003) ......................................................... 24

*Cooper v. Dupnik*,
963 F.2d 1220 (9th Cir. 1992) (en banc) .................................... 32, 33

*Crowe v. City of San Diego*
608 F.3d 406 (9th Cir. 2010) .................................................... 32, 33

iii

*Cunningham v. City of Wenatchee,*
 345 F.3d 802 (9th Cir. 2003) ............................................... 28, 29, 31

*Davis v. United States,*
 512 U.S. 452 (1994) .................................................................. 23, 24

*De Souz v. Barber,*
 263 F.2d 470 (9th Cir. 1959) ............................................................ 30

*Devereaux v. Abbey,*
 263 F.3d 1070 (9th Cir. 2001) ................................................... 28, 29

*District of Columbia v. Wesby,*
 138 S. Ct. 577 (2018) ................................. 3, 4, 13, 14, 17, 18, 22, 33

*Entler v. Gregoire,*
 872 F.3d 1031 (9th Cir. 2017) ......................................................... 18

*Estate of Lopez v. Gelhaus,*
 871 F.3d 998 (9th Cir. 2017) ........................................................... 16

*Frazier v. Cupp,*
 394 U.S. 731 (1969) ........................................................................ 30

*Gausvik v. Perez,*
 345 F.3d 813 (9th Cir. 2003) ........................................................... 30

*Hagans v. Franklin County Sheriff's Office,*
 695 F.3d 505 (6th Cir. 2012) ........................................................... 14

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) ........................................................................ 13

*Haynes v. Washington,*
 373 U.S. 503 (1963) ........................................................................ 30

**TABLE OF AUTHORITIES (continued)**

Page(s)

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................................ 17

*In re Art T.*,
234 Cal.App.4th 335 (2015) ...................................... 12, 25

*In re Gladys R.*,
1 Cal.3d 855 (1970) ........................................................... 8

*Isayeva v. Sacramento Sheriff's Dep't*,
872 F.3d 938 (9th Cir. 2017) ................................. 3, 16, 21

*Johnson v. Jones*,
515 U.S. 304 (1995) ....................................................... 16

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) (per curiam) ................ 4, 13, 14, 18, 19, 22

*Lane v. Franks*,
134 S. Ct. 2369 (2014) ................................................... 13

*McConkie v. Nichols*,
446 F.3d 258 (1st Cir. 2006) .......................................... 30

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ......................................................... 2

*Moonin v. Tice*,
868 F.3d 853 (9th Cir. 2017.) ........................................ 18

*Mullenix v. Luna*,
136 S. Ct. 305 (2015) ......................................... 13, 14, 26

*People v. Bacon*,
50 Cal.4th 1082 (2010) ................................................... 24

*People v. Roquemore*,
    131 Cal.App.4th 11 (2005) ................................................................ 24

*People v. Sauceda-Contreras*,
    55 Cal.4th 203 (2012) ...................................................................... 24

*People v. Simons*,
    155 Cal.App.4th 948 (2007) .............................................................. 24

*Plumhoff v. Rickard*,
    134 S. Ct. 2012 (2014) ............................................................... 13, 19

*Schedelbower v. Estelle*,
    885 F.2d 570 (9th Cir. 1989) ............................................................ 30

*Shafer v. County of Santa Barbara*,
    868 F.3d 1110 (9th Cir. 2017) .......................................................... 18

*Spady v. Bethlehem Area School District*,
    800 F.3d 633 (3d Cir. 2015) ............................................................. 14

*Stanton v. Sims*,
    134 S. Ct. 3 (2013) .......................................................................... 13

*Stoot v. City of Everett*,
    582 F.3d 910 (9th Cir. 2009) ....................................... 28, 29, 30, 31

*Taylor v. Barkes*,
    135 S. Ct. 2042 (2015) .................................................................... 13

*United States v. Bautista-Avila*,
    6 F.3d 1360 (9th Cir.1993) ............................................................... 29

*United States v. Doe*,
    60 F.3d 544 (9th Cir. 1995) .............................................................. 24

*United States v. Fouche*,
    776 F.2d 1398 (9th Cir. 1985) ........................................................... 24

*United States v. Leon Guerrero*,
    847 F.2d 1363 (9th Cir. 1988) ........................................................... 29

*United States v. Miller*,
    984 F.2d 1028 (9th Cir. 1993) ........................................................... 30

*United States v. Okafor*,
    285 F.3d 842 (9th Cir. 2002) ............................................................. 29

*United States v. Sablotny*,
    21 F.3d 747 (7th Cir.1994) ............................................................... 29

*White v. Pauly*,
    137 S. Ct. 548 (2017) ....................................................................... 13

*Wilson v. Layne*,
    526 U.S. 603 (1999) ......................................................................... 33

*Wood v. Moss*,
    134 S. Ct. 2056 (2014) ..................................................................... 13

*Yarris v. County of Delaware*,
    465 F.3d 129 (3d Cir. 2006) .............................................................. 30

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ..................................................................... 13

**United States Code**

28 U.S.C. § 1291 (2018) ......................................................................... 2
28 U.S.C. § 1331 (2018) ......................................................................... 2
28 U.S.C. § 1343 (2018) ......................................................................... 2
28 U.S.C. § 2107 (2018) ......................................................................... 3
42 U.S.C. § 1983 (2018) ............................................................... 2, 17, 33

**Rules**

California Rules of Court, Rule 8.1105 ................................................................. 25
Ninth Circuit Rule 32-1 ........................................................................................ 36
Federal Rules of Appellate Procedure 4 ................................................................ 3
Federal Rules of Appellate Procedure 32 ............................................................ 36

# I.	INTRODUCTION

This appeal arises from the District Court's denial of Detectives Arteaga, Cortina, Motto and Pere's ("Detectives") motion for summary judgment on the issue of qualified immunity.  In summary, Plaintiff Art Tobias ("Tobias") claims that Defendants Arteaga, Cortina, Motto and Pere – homicide detectives with the Los Angeles Police Department – violated his civil rights by denying him legal counsel and coercing him during a custodial interrogation.

Although the Detectives contend that their actions were appropriate and lawful, this appeal focuses upon whether the contours of Tobias' rights were clearly established and sufficiently defined such that any reasonable officer would have understood their actions to be improper.

In evaluating Tobias' claims, the District Court concluded that "these facts present a close question because there appears to be no case law determining whether the precise question 'Could I have an attorney?' is equivocal…."  ER 29. The District Court further held that "Plaintiff's interrogation does not fall clearly within any of [the published] cases."  ER 14.  Despite acknowledging the lack of any precedent to clearly establish Tobias' rights, the Court denied qualified immunity to the Detectives.

The District Court's denial of the Detectives' request for qualified immunity is in direct conflict with the recent tutelage from the Supreme Court; to deny

qualified immunity, "existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019). Further, "the clearly established right must be defined with specificity. '[The United States Supreme Court] has repeatedly told courts … not to define clearly established law at a high level of generality.'" *City of Escondido*, 139 S. Ct. at 503. In direct conflict with those standards, the District Court denied the Detectives qualified immunity based upon a review of Tobias' rights only at a high level of generality.

As discussed more fully hereinbelow, the lack of a clearly established right confirms that this appeal should be granted and the Detectives afforded qualified immunity.

## II.    JURISDICTIONAL STATEMENT

Tobias' claims are brought pursuant to 42 U.S.C. § 1983 (2018) based upon the alleged violation of his constitutional rights. ER 478. Pursuant thereto, jurisdiction was proper in the District Court pursuant to 28 U.S.C. § 1331 (2018) and 28 U.S.C. § 1343(a)(3) (2018).

The Detectives submit this appeal, pursuant to 28 U.S.C. § 1291 (2018) and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), on the basis that a denial of qualified immunity is an immediately appealable decision. Upon denial of a summary judgment motion based on qualified immunity, this Court has jurisdiction

to entertain an appeal from that denial, and to decide whether, taking the facts in the light most favorable to the non-moving party, the defendant is entitled to qualified immunity. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017).

On September 17, 2018, the District Court issued an order denying the Detectives' motion for summary judgment on the issue of qualified immunity. ER 1-24. The Detectives appealed the MSJ Order within 30 days, filing their Notice of Appeal on October 16, 2018. ER 32-67. Accordingly, this appeal is timely under 28 U.S.C. § 2107(a) (2018) and Fed. R. App. P. 4(a)(1)(A).

## III. ISSUES PRESENTED

The Detectives respectfully submit the following issues:

1.     Was the analysis undertaken by the District Court in evaluating the Detectives' motion for summary judgment and request for qualified immunity flawed due to the District Court defining the "clearly established" rights at only a high level of generality and without regard for the absence of prior precedent? ER 23. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018).

2.     Was the state of the law clearly established at the time of Plaintiff Tobias' interrogation on August 20, 2012, such that a reasonable officer would have understood Plaintiff's statement "Could I have an attorney, because that's not

me" – mentioned only once in passing – to be an unequivocal request for legal counsel? The District Court's conclusion that "there appears to be no case law determining whether the precise question 'Could I have an attorney?' is equivocal," confirms that any such rights were not clearly established. ER 29. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153-54 (2018) (per curiam); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018).

3.      Was the state of the law clearly established at the time of Plaintiff Tobias' interrogation such that a reasonable officer would have understood the point that a combination of approved and lawful interrogation techniques crossed the line and became a coercive interrogation? *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153-54 (2018) (per curiam); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018).

## IV.    STATEMENT OF THE CASE

Plaintiff Tobias' claims are derived primarily from his interrogation by the Detectives during a murder investigation. ER 475-476. Notwithstanding, the events leading up to that interrogation, as well as the resulting criminal prosecution, are relevant to an analysis of qualified immunity.

## A.     The Castaneda Murder

At approximately 12:40 a.m. on August 18, 2012, Detectives Pere and Motto were notified of a gang shooting which had just occurred.  According to reports, two suspects approached and began shooting at a group of individuals who were standing on the side of the street at 1415 Alvarado Terrace.  Two victims were critically injured with a third (Alex Castaneda) killed.  ER 396, 479.  Several Los Angeles Police Department (LAPD) officers (including Detectives Pere and Motto) were dispatched to the scene to undertake an investigation.[1]  During the initial investigation, the witnesses disclosed that one of the two assailants had made statements during the shooting of "Fuck 18th Street" and "Salvatrucha;" both comments were believed to be related to an ongoing gang feud between the local cliques of the Mara Salvatrucha ("MS-13") and 18th Street ("18th") gangs.[2]  ER 396, 388-389, 480.  The investigation also revealed a security camera on an adjacent building which had captured one of the two suspects as he was shooting.  ER 397, 480.

Given the location of the incident within a gang neighborhood, the ongoing gang feuds and the comments from the witnesses of gang-related statements from

---

[1] Detectives Cortina and Arteaga were not involved in the initial investigation on the night of the murder.

[2] Both MS-13 and 18th Street are transnational criminal organizations, which began as street gangs in the Rampart division of Los Angeles.

the shooters, the Detectives requested a local gang enforcement officer (Officer Cooley) who was familiar with the gangs' operations and membership in that area review the video. ER 397, 228-229. After watching the video, Officer Cooley stated that the shooter appeared to be Plaintiff Art Tobias. ER 397, 229.

Officer Cooley's identification was based upon an interaction with Tobias' mother (Helen Contreras) only a few hours earlier wherein Ms. Contreras shared a photo of Tobias and reported him missing. ER 397, 229, 235, 480-481. Ms. Contreras was concerned that her son may have been involved in a shooting earlier that night (the Cruz murder[3]) based upon his Facebook post, which warned "I'm going to go on the most important mission of my life, don't know if I'm going to come back alive or dead or arrested." ER 397, 229.

In hopes of gathering as much information as possible, the Detectives continued their investigation, including requesting a second gang officer – Officer Born – review the video. ER 398, 390-391. Significantly, Officer Born was a gang enforcement officer in the Olympic division (which neighbors the Rampart division where the murder had occurred) who focused on the MS-13 gang. ER 398, 239-240. After being shown the video, Officer Born independently identified

---

[3] Tobias was also involved in the murder of Edwin Cruz, which occurred approximately two hours before the Castaneda murder. Both murders appear to be gang-related; the Cruz murder was in retaliation for Tobias being punched earlier in the day. ER 258-259. Tobias' conviction for the Cruz murder has not been challenged.

the shooter as Tobias. ER 398, 240. Officer Born was familiar with Tobias based upon her role as a gang enforcement officer and having previously reviewed his Facebook posts, photographs and contact cards prepared by other LAPD officers which confirmed Tobias was a self-admitted MS-13 gang member. ER 398, 240.[4]

The information obtained by the Detectives allowed them to confirm that Tobias was a student at a local school – Berendo Middle School. Despite the significant evidence implicating Tobias in the Castaneda murder, the Detectives elected to continue their investigation, including meeting with two individuals at Berendo Middle School to inquire if they were able to provide an identification of the shooter. ER 399, 244-245, 251-252, 392. On the afternoon of August 20, 2012, Detectives Arteaga and Motto met with Los Angeles Unified School District (LAUSD) Police Officer East and School Dean Roger Negroe and showed them the portions of the video; Officer East identified Tobias, with the caveat that Tobias appeared heavier in the video than in person. ER 399, 244-245. By comparison, Dean Negroe was initially unable to identify the individual by name who was depicted in the video. ER 399, 251-252. After leaving the meeting, Dean Negroe departed the office wherein he observed Tobias, whom he believed to have

_____

[4] The material gathered from Plaintiff's Facebook account is also remarkable. In relevant portion, it discusses an incident which occurred a few weeks prior to the Castaneda murder wherein two of Plaintiff's fellow gang members were murdered. Plaintiff responded by stating his desire to seek revenge for those murders. ER 398, 284.

been the individual depicted in the video.  ER 399, 251-252.  He immediately notified the Detectives of his observations, which resulted in the Detectives confronting Tobias and transporting him to the police station for further questioning.  ER 399, 274, 252.

## B.  Tobias' Interrogation, Part I

Following Tobias' arrival at the police station, he was escorted into an interrogation room where he met with Detectives Pere and Cortina.  ER 399, 304, 287.  Despite Tobias' allegations to the contrary, his interrogation was largely unremarkable, with the entirety of his interactions recorded on video and submitted to the District Court for review.[5]  ER 400, 265.  Overall, the interrogation lasted approximately ninety minutes in total, including the break taken approximately half-way through.  ER 400, 287, 289.

The first portion of Tobias' interrogation was completed by Detectives Pere and Cortina, with Pere leading the questioning.  ER 400, 287, 304.  As can be seen on the video, the Detectives' initial focus was on determining whether Tobias was sufficiently mature to appreciate right from wrong, as required by the California Supreme Court's holding in *In re Gladys R*., 1 Cal.3d 855 (1970).  ER 400, 287, 304.  Thereafter, the Detectives provided Tobias with the *Miranda* admonition before questioning him about the murder.  ER 400, 287, 275, 277.  After

---

[5] Tobias concedes that the videos accurately depict the interrogation.  ER 265.

approximately fifty minutes, Detectives Pere and Cortina ceased their questioning and departed the interrogation room.  ER 400, 287.

## C.     Tobias' Passing Reference of an Attorney

Over the approximately ninety-minute span of his interrogation, Tobias never exercised his right to remain silent.  ER 402, 287, 289.  However, there is a dispute as to whether he requested legal counsel.[6]  At approximately thirty-two minutes into Tobias' interrogation by Detectives Pere and Cortina, Tobias commented "Could I have an attorney, because that's not me."  That one passing comment is the only time Tobias ever referenced or alluded to a request for an attorney.  ER 402, 287, 289.  Detective Pere interpreted Plaintiff's passing comment as a conditional statement as opposed to an unequivocal request for legal counsel.  ER 402, 305-306.  Notably, only Detectives Pere and Cortina were present and heard Tobias' statement.  ER 402, 287, 299, 296.[7]

## D.     Tobias' Mother Identifies Him as the Shooter in the Video

While Tobias was being interrogated by Detectives Pere and Cortina, Detective Arteaga was in a separate room meeting with Tobias' mother, Helen Contreras.  ER 400, 295.  After an initial discussion of the circumstances

---

[6] The referenced statement from Tobias can be viewed on the video at time-stamp 17:06.

[7] None of the information obtained by Detectives Pere and Cortina was used during the criminal prosecution of Plaintiff.

surrounding Ms. Contreras' missing persons report of her son, Detective Arteaga

shows her a screen-shot from the video of the shooting while asking "that's your

son right there, right?" to which Ms. Contreras responds "Yes." ER 400, 236, 291.

The first session of Tobias' interrogation and the interview of his mother ceased at

roughly the same time.[8]

### E.    Tobias' Interrogation, Part II

Upon hearing that Detectives Pere and Cortina's interrogation had stalled,

Detective Arteaga elected to question Tobias. Notably, Detective Arteaga was unaware

of Tobias' purported request for counsel. Similarly, Tobias never requested or even

referenced legal counsel at any time during his interrogation by Detective Arteaga.

Detective Arteaga elected to employ different interrogation techniques to those

used by Detectives Pere and Cortina. ER 401, 294. For example, Detective Arteaga

attempted to mirror Tobias' language (including profanity) while sharing discrete

details of the Castaneda murder which he believed would result in Tobias "filling in

the blanks." ER 401, 297-298. This ultimately led to Tobias confessing to the

murder of Castaneda, including providing details that were not otherwise known or

openly discussed. ER 401, 289. Only after Tobias confessed to murdering Alex

Castaneda was he placed under arrest. ER 402, 273.

---

[8] After learning that her son was implicated in criminal conduct, Ms. Contreras
recanted her identification that he was the shooter in the video. ER 236, 291.

Despite Plaintiff's claims that he was denied his *Miranda* warnings; was physically intimidated; threatened; lied to; and subjected to "other improper tactics" during his interrogation (ER 494-496), his deposition testimony is to the contrary. In fact, Tobias testified at deposition that he was provided the *Miranda* admonition; was advised of his right to remain silent; was never physically threatened; was never physically touched nor was there any threatening actions or gestures; and was even provided snacks during his interrogation. ER 401, 494-496, 265-267, 270, 272, 275-277. Moreover, Tobias was never promised immunity in exchange for his testimony. Instead, the Detectives consistently confirmed that any potential criminal sentence would be up to the discretion of the judge presiding over the criminal prosecution. ER 401, 271.

## F. Relevant Criminal Proceedings

On August 22, 2013, Tobias was found guilty of murdering Alex Castaneda. In advance of that finding, Tobias sought to exclude his confession by arguing that he attempted to invoke his right to legal counsel during his interrogation. In denying Tobias' motion to suppress, the criminal court concluded that Tobias had *not* invoked his right to counsel, stating in relevant part as follows:

> What basically I have is a statement in passing. Well, if that's not me—'That's not me. I want a lawyer,' whether that constitutes a revocation of his waiver to speak to the police. I mean, if you want a tentative based on what I have now, I just don't think that's sufficient.

*In re Art T.*, 234 Cal.App.4th 335, 344 (2015). The criminal court's ruling appears to have been based both upon the lack of unequivocal language by Tobias, as well as his apparent maturity. Tobias' maturity was evidenced by his behavior and conduct; Tobias was already consuming alcohol, smoking marijuana, was claiming membership in the criminal street gang MS-13 and was claiming to have killed a member of a rival gang.[9] ER 403, 256-257, 263, 264, 268-269, 572, 330. Tobias was ultimately convicted of murdering Alex Castaneda. ER 498.

Tobias' conviction was subsequently overturned by the California Court of Appeals in a published decision, wherein it concluded that the Detectives should have considered Tobias' age in determining whether the passing comment constituted an invocation of counsel. *See, In re Art T,* 234 Cal.App.4th at 354. The opinion by the California Court of Appeals defined new law in holding that a minor's age must be taken into consideration when evaluating a purported request for counsel. *Id.*

## V.   SUMMARY OF THE ARGUMENT

The state of the law in the Ninth Circuit puts police officers in the untenable position of enforcing the laws without knowing whether their particular conduct is constitutional. In recognition of that reality, the United States Supreme Court has

---

[9] Tobias' public postings on social media (i.e., Facebook) were reviewed by the Detectives as part of the murder investigation prior to his arrest. ER 334.

12

established and refined the qualified immunity doctrine, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The District Court's ruling denying the Detectives' motion for summary judgment fails to heed numerous admonitions from the High Court about defining "clearly established" constitutional rights at a high level of generality. By comparison, the repeated grant of qualified immunity by the Supreme Court underscores the narrow circumstances in which government officials may be held personally liable. *See, City of Escondido*, 139 S. Ct. at 503; *Kisela*, 138 S. Ct. at 1152-53; *Wesby*, 138 S. Ct. at 589-91; *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017); *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017); *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015); *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Carroll v. Carman*, 135 S. Ct. 348, 350-52 (2014) (per curiam); *Lane v. Franks*, 134 S. Ct. 2369, 2383 (2014); *Wood v. Moss*, 134 S. Ct. 2056, 2070 (2014); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023-24 (2014); *Stanton v. Sims*, 134 S. Ct. 3, 7 (2013).

Indeed, the Supreme Court has repeatedly warned the lower courts to not analyze clearly established law at too high a level of generality. *City of Escondido*, 139 S. Ct. at 503; *Mullenix*, 136 S. Ct. at 311; *City and County of San Francisco v.*

*Sheehan*, 135 S. Ct. 1765, 1775-76 (2015).  Rather, courts must undertake the qualified immunity analysis "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).  Put another way, the court must enunciate "a concrete, particularized description of the right."  *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012); *Spady v. Bethlehem Area School District*, 800 F.3d 633, 638 (3d Cir. 2015) (the right at issue must be framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context").

To deny qualified immunity, "existing precedent must place the lawfulness of the particular action beyond debate."  *City of Escondido*, 139 S. Ct. at 504.  Despite the foregoing, the District Court's evaluation – which was limited to a mere two paragraphs in the MSJ Order and devoid of any cases identifying a clearly established right – was predicated upon a vague and overbroad conclusion that Tobias' "rights in the context of this case are so well established that law enforcement officers must be deemed to have knowledge of them."  The District Court's generalized statement is in direct conflict with the United States Supreme Court's precedence.  *City of Escondido*, 139 S. Ct. at 503; *Kisela*, 138 S. Ct. at 1153; *Wesby*, 138 S. Ct. at 590-91.

Had the District Court undertaken the required analysis consistent with the Supreme Court's tutelage, it would have reached the undeniable conclusion that Tobias' rights were not clearly established. Pursuant thereto, the Detectives should have been granted qualified immunity. Turning first to Tobias' claim of being denied legal counsel, the law defining what constitutes an unequivocal request for legal counsel by a juvenile was not clearly established such that the Detectives had clear notice that their actions could amount to a violation of Tobias' civil rights. The District Court acknowledge as much, stating: "The Court concedes these facts present a close question because there appears to be no case law determining whether the precise question 'Could I have an attorney?' is equivocal."

Furthermore, it was not clearly established at the time what combination of approved and lawful interrogation techniques crossed the line to become "coercive." The District Court even concluded that "Plaintiff's interrogation does not fall clearly within any of [the published] cases." Instead, the Detectives were forced to conduct a murder investigation in the absence of any clearly established precedence. As such, each of the Detectives is entitled to qualified immunity.

## VI.    STANDARD OF REVIEW

A denial of qualified immunity is immediately appealable if it "turns on an issue of law." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). A court of appeal has appellate jurisdiction to consider whether a district court erred in its construction

of clearly established law at the time of the act complained of. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (noting that *Johnson v. Jones*, 515 U.S. 304 (1995) reaffirmed interlocutory appeal jurisdiction to review "whether the federal right allegedly infringed was 'clearly established'").

In an appeal from the denial of qualified immunity, the court reviews the order to determine whether the facts, considered in the light most favorable to the plaintiff, shows either no violation of a constitutional right or no violation of a right that was clearly established in law. *Isayeva*, 872 F.3d at 945. The court reviews the denial of qualified immunity *de novo*. *Id.*

When analyzing an argument that the district dourt mistakenly identified clearly established law, the court must also take as given the facts the district court assumed when it denied summary judgment. *Johnson v. Jones*, 515 U.S. at 319; *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998, 1007 (9th Cir. 2017). If the district court does not expressly set forth the facts it relies upon, the court reviews the record only to the extent necessary to determine what facts the district court likely assumed. *Estate of Lopez*, 871 F.3d at 1007.

## VII.  ARGUMENT

### A.    A Clearly Established Right is Not One of High Generality

As the Supreme Court has continually pronounced, in order to deny an officer qualified immunity, not only must a right have been violated, but the

violated right must have been "clearly established" at the time. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Wesby*, 138 S. Ct. at 589. Assuming arguendo that Tobias' rights were violated,[10] the District Court failed to properly analyze the second prong of whether Tobias' right to counsel and freedom from coercive investigation techniques were clearly established at the time of his interrogation.

The analysis of whether a right is "clearly established" cannot be highly generalized to mean a right free from unlawful violations. Instead, "the clearly established right must be defined with specificity." *City of Escondido*, 139 S. Ct. at 503. In other words, an officer must have "fair warning" that his conduct is improper (*Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) and requires that existing precedent must have placed the statutory or constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741; *Wesby*, 138 S. Ct. at 589. "Case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's

---

[10] The Detectives do not concede that Tobias' rights were violated.

place, that what he is doing violates federal law." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). "[A] body of relevant case law is usually necessary to clearly establish the answer . . . ." *Wesby*, 138 S. Ct. at 590.

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent to be considered settled law. *Wesby,* 138 S. Ct. at 589. That means the principle is dictated by either "controlling authority" or a "robust" consensus of cases of persuasive authority. *Id*. In this Circuit, "controlling authority" is binding precedent – Supreme Court and Ninth Circuit published case law. *See, Entler v. Gregoire*, 872 F.3d 1031, 1041 (9th Cir. 2017). Absent such law, the courts may look to persuasive authority from other circuits, district courts and state law to determine whether a robust consensus of cases exists. *See, Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017.)

The Supreme Court recently provided guidance in *Kisela v. Hughes* (138 S. Ct. at 1150-51). In *Kisela,* Officer Kisela was accused of violating Amy Hughes' Fourth Amendment right when he shot at her while she was holding a large kitchen knife outside of her home. Although the trial court granted summary judgment to the defendant officer, the Court of Appeals reversed, holding that existing Ninth Circuit precedent clearly established that the conduct violated the right. *Id.* at 1151. The Supreme Court reversed, holding that the precedent cited by the Ninth

Circuit was not analogous and the Court of Appeals had failed to properly implement the clearly established standard of law. *Id.* at 1152-54.

In particular, the Supreme Court stated: "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* at 1153 (quoting *Plumhoff v. Rickard,* 134 S. Ct. 2012 (2014)).

Most recently, in *City of Escondido v. Emmons*, the Supreme Court again admonished courts to properly consider the second prong of the qualified immunity analysis. In that case, defendant Officer Craig had been granted summary judgment by the District Court, which was overturned by the Court of Appeals based upon a holding that "the right to be free of excessive force was clearly established at the time of the events in question." 139 S. Ct. at 502. In reversing the Court of Appeals, the Supreme Court noted that the Court of Appeals had "contravened those settled principles" and "should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances." *Id.* at 503-504. "The [lower court] made no effort to explain

how that case law prohibited Officer Craig's actions in this case. That is a problem

under our precedents." *Id.*

The District Court in this matter similarly misunderstood and failed to

provide any consideration of this prong of the qualified immunity analysis, instead

ruling in relevant part as follows:

> As explained, genuine disputes of material fact remain with respect
> to the constitutional claims against Defendants, and those rights in
> the context of this case are so well established that law
> enforcement officers must be deemed to have knowledge of them.
> Defendants fail to establish their entitlement to qualified immunity
> is "beyond controversy."

ER 23.[11]  The District Court's MSJ Order contains the same generalities and

vagueness that the Supreme Court flatly rejected in *City of Escondido.*

In total, the MSJ Order contained two paragraphs discussing qualified

immunity, with the concept of a "clearly established" right referenced only once –

in the standard for evaluating qualified immunity.  ER 23.  Nowhere in the MSJ

Order is there any discussion or even identification of the specific rights at issue.

Moreover, the District Court utilized an incorrect standard in placing the burden on

the Detectives to prove qualified immunity.  ER 23.  Contrary to the District

Court's MSJ Order, "[o]nce the official pleads qualified immunity, the burden is

---

[11] The District Court did not cite any authority supporting its conclusion, but
presumably, the District Court meant to reference the "beyond debate" language
from *al-Kidd*.  *See*, *al-Kidd,* 563 U.S. at 741.

on the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva*, 872 F.3d at 946.

Notwithstanding the District Court's misstatement that the Detectives were required to prove that their qualified immunity was "beyond controversy," the District Court also erred by doing exactly what the Supreme Court has repeatedly counseled courts not to do – i.e., it defined the violated right at a high level of generality, when it concluded "those rights in the context of this case are so well established that law enforcement officers must be deemed to have knowledge of them." Yet, the MSJ Order is devoid of any prior precedent which would have provided clear notice to the Detectives that their alleged conduct violated Tobias' rights.

In fact, the MSJ Order contains no analysis whatsoever regarding Tobias' right to legal counsel given the vagueness of his passing comment to an attorney, and perversely admits that "it is a close call whether a reasonable juror could resolve this issue [of whether Defendants' interrogation tactics shocked the conscience to constitute a Fourteenth Amendment substantive due process violation] in favor of Plaintiff." ER 13.

In sum, the District Court's MSJ Order glaringly fails to evaluate the Detectives' right to qualified immunity within the parameters delineated by the

Supreme Court; absolutely no analysis was undertaken to determine if the rights that were allegedly violated had been clearly established in connection to the facts of this case. Instead, relying upon a high level of generality and no case law or even identification of which acts constituted a violation, the District Court blindly concludes that unidentified rights had been clearly established and the Detectives "must be deemed to have knowledge of them."

This sort of decision and reasoning is exactly the type that has repeatedly been overturned and criticized time and again by the Supreme Court. *See*, *generally*, *Kisela*, 138 S. Ct. at 1153; *Wesby,* 138 S. Ct. at 590-591; *City of Escondido,* 139 S. Ct. at 503. Consequently, the District Court's analysis and MSJ Order constitute reversible error. As discussed more fully herein, the Detectives are entitled to qualified immunity.

**B.     The Absence of Any Precedent as to Whether Tobias' Passing Statement Constituted an Unequivocal Request for Counsel Confirms that the Issue Was Not Clearly Established**

Tobias has asserted that his passing comment of "Could I have an attorney, because that's not me" was an unequivocal request for counsel. The case law, however, is not so clear. In fact, the rulings by the various courts that have opined on Tobias' statement have disagreed about whether his comment was an

unequivocal request for counsel, with the District Court even confirming that "there appears to be no case law determining whether [Plaintiff's passing statement] is equivocal." If the courts cannot even agree based on existing case law that Tobias' comment was an unequivocal request for counsel, then "existing precedent [has not] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Consequently, the Detectives are entitled to qualified immunity.

In *Davis v. United States*, 512 U.S. 452 (1994), the United States Supreme Court confirmed that once a suspect has waived his *Miranda* rights, any subsequent assertion of the right to counsel must be articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Thus, the question is whether Tobias' comment "Could I have an attorney, because that's not me" constituted an unequivocal request for counsel. Given the state of the law at the time of his interrogation, a reasonable officer would not have perceived Tobias' passing statement as an unequivocal request for counsel.

In fact, virtually identical statements have consistently been found insufficient. For example, every one of the following statements has been considered equivocal and insufficient to constitute a valid request for legal counsel:

- "I think I would like to talk to a lawyer." *Clark v. Murphy*, 331 F.3d 1062, 1069, 1071 (9th Cir. 2003).

- "Maybe I should talk to a lawyer." *Davis v. United States*, 512 U.S. 452, 458-59 (1994).

- "I might want to talk to a lawyer." *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir. 1985).

- "Maybe I ought to see an attorney." *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995).

- "If you can bring me a lawyer," then "that way I can tell you everything that I know and everything that I need to tell you and someone to represent me." *People v. Sauceda-Contreras*, 55 Cal.4th 203, 219 (2012).

- "Can I call a lawyer or my mom to talk to you?" *People v. Roquemore*, 131 Cal.App.4th 11 (2005).

- "How long would it take to get a lawyer?" *People v. Simons*, 155 Cal.App.4th 948 (2007).

- "I think it'd probably be a good idea for me to get an attorney." *People v. Bacon*, 50 Cal.4th 1082, 1104, 1105 (2010).

- "What time will I see a lawyer?" *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995).

Each of the statements referenced above are facially similar to Tobias'

passing comment – they all reference an attorney and imply that the suspect may

wish to seek legal counsel.  Yet every one of the above statements has been

deemed insufficient to constitute an unequivocal request for legal counsel.  During

Tobias' criminal prosecution, the criminal court concluded that Tobias had not

invoked his right to counsel, stating in relevant part as follows:

> What basically I have is a statement in passing. Well, if that's not
> me—'That's not me. I want a lawyer,' whether that constitutes a
> revocation of his waiver to speak to the police. I mean, if you want
> a tentative based on what I have now, I just don't think that's
> sufficient.

*In re Art T.*, 234 Cal.App.4th at 344.  On appeal, the California Court of Appeals

overturned Tobias' conviction and created new law on the ground that Tobias' age

needed to be taken into consideration during the interrogation.  *See, generally,* 234

Cal.App.4th at 354.  The fact that the opinion was published is significant as

California Rules of Court, Rule 8.1105, authorizes decisions to be published only

in very narrow situations, such as when an opinion establishes a new rule of law,

applies an existing rule of law to significantly different facts or modifies an

existing rule of law.  If a trial judge is unable to clearly understand and decide

these issues and a published opinion from the California Court of Appeals is

necessary to provide clarification, how can the Detectives be deemed to have had

"clear notice" of the contours of Tobias' right?

The District Court's own comments further confirm that there was no clarity on whether this statement was an invocation of counsel. On February 21, 2018, the Detectives filed a motion to dismiss Tobias' Second Amended Complaint, which focused upon application of the qualified immunity defense and whether this issue was clearly established. ER 457-474. In relevant part, the District Court acknowledged that whether Tobias' statement was sufficient to invoke his right to counsel was "an extremely close call" (ER 376) and that the District Court was "inclined to rule in favor of qualified immunity." ER 378. Even more significant is the District Court's own concession that this precise state of facts had no prior legal precedence:

> "The Court concedes these facts present a close question because there appears to be no case law determining whether the precise question "Could I have an attorney?" is equivocal." ER 29.

The District Court further held that:

> "Neither the Ninth Circuit nor the Supreme Court has held that age must be taken into consideration when determining whether a juvenile, after waiving *Miranda* rights, has invoked his or her right to an attorney." ER 28.

The District Court's comments underscore the fact that Tobias' right was not clearly established: "A clearly established right is one that is sufficiently clear that *every reasonable official would have understood that what he is doing violates that right*." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added, internal quotation marks omitted). Given the struggles that three different courts (the

criminal court, the California Court of Appeals and the District Court) have faced in addressing whether or not the comment was an invocation of counsel, it is obvious the law in this area was not clearly established such that the Detectives should have recognized the comment as an unequivocal request for counsel. Consequently, each of the Detectives is entitled to qualified immunity on this issue.

## C.    Existing Precedent Does Not Clearly Establish What Combination of Approved and Lawful Interrogation Tactics Constitute a Coercive Interrogation

Tobias further claims that the Detectives' combination of multiple approved and lawful tactics during his interrogation resulted in a coercive interrogation, which lead to the fabrication of evidence in violation of his Fifth and Fourteenth Amendment rights.  Although the Detectives dispute that any right was violated, this appeal focuses only upon whether the parameters of a lawful interrogation were clearly established at the time, as no published case has confronted a case with facts similar to the current matter.  The District Court confirmed the lack of precedent, stating "Plaintiff's interrogation does not fall clearly within any of [the published] cases."  As such, the Detectives are also entitled to qualified immunity on this issue.

A claim for fabrication of evidence requires Tobias to prove that the "detectives used investigative techniques that were so coercive and abusive that [they] knew or should have known those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). A deliberate fabrication of evidence claim is analyzed under the Fourteenth Amendment. *Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir. 2003). As stated in *Chavez v. Martinez*, 538 U.S. 760 (2003) and *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009), to prove an interrogation is coercive under the Fourteenth Amendment, it must "shock the conscious" by being the equivalent of torture and done with no justifiable government purpose. *See, Chavez*, 538 U.S. at 774-75; *Stoot*, 582 F.3d at 928.

Tobias' claims that several of the Detectives' techniques were abusive is not supported by case law. For example, Tobias alleges that the Detectives[12] repeatedly told him to tell the truth, but such actions are neither coercive or abusive. "Continuing to question a suspect after the suspect claims he is innocent does not constitute coercion and is often necessary to achieve the truth." *See,*

---

[12] It should again be noted that only Detective Arteaga was involved in the second session of Tobias' interrogation which resulted in his confession. ER 289. Likewise, only Detectives Pere and Motto were present at the crime scene and obtained identifications from Officers Born and Cooley.

*Cunningham*, 345 F.3d at 810; *United States v. Leon Guerrero*, 847 F.2d 1363, 1366-67 (9th Cir. 1988).

Tobias also claims that the Detectives decision to continue the interrogation after he denied any wrongdoing was improper and constituted coercion. Yet, officers cannot be held to have engaged in coercive conduct or deliberately fabricated evidence if they disbelieve initial denials of wrongdoing and continue to question an individual. *Devereaux*, 263 F.3d at 1077. Continuing to question a suspect after the suspect claims innocence does not constitute coercion and is often necessary to achieve the truth. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir.1997) (stating officers' repeated insistence that the suspect tell the truth did not amount to coercion).

Similarly, the Detectives' comments to Tobias that murder charges could potentially be filed against him were not coercive. *Stoot*, 582 F.3d at 928-29; *United States v. Okafor*, 285 F.3d 842, 846-47 (9th Cir. 2002) (telling suspect he would be subject to 10-20 years in prison did not render confession involuntary). Officers are allowed to recite the sentence a suspect may receive if found guilty. *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir.1993); *United States v. Sablotny*, 21 F.3d 747, 752-53 (7th Cir.1994) (officer may use fear of prison).

Further, Tobias' claim that Detective Arteaga (or any other Detective) aggressively suggested he was involved in the crime does not amount to

deliberately fabricated evidence. *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003). Misrepresentations linking a suspect to a crime or statements which inflate the extent of evidence against a suspect do not render a confession involuntary. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993); *see also*, *Schedelbower v. Estelle*, 885 F.2d 570, 574 (9th Cir. 1989).

Similarly, lying to a suspect in an interrogation does not amount to torture in violation of the Fourteenth Amendment. *McConkie v. Nichols*, 446 F.3d 258 (1st Cir. 2006) (concluding detective who lied to defendant about the confidentiality of his admission to sexual contact with a child did not shock the conscience); *Yarris v. County of Delaware*, 465 F.3d 129, 143 (3d Cir. 2006) (holding detectives who used trickery or deceit to obtain false evidence did not support violation of constitutional rights). Even a suspect's status as a minor does not preclude a finding of voluntariness. *De Souz v. Barber*, 263 F.2d 470 (9th Cir. 1959); *Stoot*, 582 F.3d at 928-29 (rejecting petitioner's claim that the officer's interview of a developmentally delayed young boy which included promises and threats violated the Fourteenth Amendment).

A coercive interrogation exists *only* when the totality of the circumstances shows that the officer's tactics were so extreme as to undermine the suspect's ability to exercise his free will. *Haynes v. Washington*, 373 U.S. 503, 513 (1963).

Tobias failed to demonstrate that he was subjected to such extraordinary extreme conduct/interrogation that undermined his ability to exercise his free will. *See, Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (suspect's eight (8) hour interrogation with "unsettling" questions not coercive because suspect not refused food/water, no use of violence or the threat of violence, statement/threat that officer "has put people in prison" for the offense cannot be said to have "undermined a suspect's free will").

Although established precedent has addressed the appropriateness of certain interrogations tactics in isolation, no published case has clearly established when a lawful interrogation becomes coercive. Tobias' claims that his interrogation was coerced closely resembles the claims made and rejected by the Ninth Circuit in *Stoot v. City of Everett*. 582 F.3d at 928-29. In *Stoot*, the 14-year-old "developmentally delayed young boy" with limited comprehension alleged he was subjected to a coercive interrogation which included "improper promises and threats" which were strikingly similar to those at issue here. However, this Court found Stoot's allegations to fall "far below what is required to state a claim." *Id*. at 929. If anything, Tobias is less sympathetic than the plaintiff in *Stoot*; although both were of a similar age, Stoot was developmentally delayed and had no evidence of any prior contact with law enforcement. *Stoot*, 582 F.3d at 913, 928. By comparison, Tobias admits to having been a member of a ruthless street gang

and had been engaging in conduct typically reserved for adults (drinking alcohol, smoking marijuana and threatening/assaulting others).  ER 403, 256-257, 263, 264, 268-269, 572, 330.

Plaintiff relies upon *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992) (en banc), cert. denied, 506 U.S. 953 (1992), to suggest that his interrogation was coercive.  However, the facts in *Cooper* are inapposite and far beyond the conduct by the Detectives in this matter.  In *Cooper*, a police task force had devised a strategy for interrogating suspects:  the "core of their plan was to ignore the suspect's Constitutional right to remain silent as well as any request he might make to speak with an attorney in connection therewith, to hold the suspect incommunicado, and to pressure and interrogate him until he confessed."  *Id*. at 1224.  In fact, one member of the task force testified, "You know, whether he asked for an attorney or for his mommy or whatever he asked for, if he asked to remain silent, I wasn't going to stop. We decided it was going to be very clear-cut, forget his Miranda rights, the hell with it."  *Id*. at 1226.

In comparing the facts of this case to the established precedent, such as *Cooper,* 963 F.2d 1220 and *Crowe v. City of San Diego,* 608 F.3d 406 (9th Cir. 2010), the District Court concluded as follows:

> *Plaintiff's interrogation does not fall clearly within any of these cases*. At thirteen, Plaintiff is the youngest, and experienced some of the interrogation tactics used in *Cooper* and *Crowe*. On the other hand, Plaintiff's interrogation lacked some of the extreme conduct

found in those cases. *See, e.g., id.* at 431-32 (describing the interrogations as "brutal and inhumane," "psychological torture," and an "extreme form of child abuse"); *Cooper*, 963 F.2d at 1248 (describing Cooper's mistreatment as "sophisticated psychological torture"). ER 14-15, emphasis added.

If the facts of this case "[do] not fall clearly within any of [the established precedent]", how can the District Court conclude that the right was clearly established? Tobias' allegations fall woefully short of satisfying his burden of demonstrating a "robust 'consensus of cases of persuasive authority'" which demonstrate that the Detectives' actions were clearly unlawful. *al-Kidd*, 563 U.S. at 741-42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

While the Detectives' interrogation tactics may seem harsh in the serenity of a courtroom and far away from a murder investigation, the doctrine of qualified immunity exists to protect those officers that may have been mistaken on the applicable facts, on what conduct was lawful or even a combination of both. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Wesby*, 138 S. Ct. at 589.

Here, the District Court plainly stated that "Plaintiff's interrogation does not fall clearly within any of these cases." ER 14. Moreover, the District Court concluded that Tobias' interrogation was less arduous or egregious than the interrogations held in *Crowe* or *Cooper*. Given this lack of clarity on similar facts,

it cannot be said that a clearly established right was "defined with specificity" to have put the Detectives on notice that their actions could violate Tobias' rights. *City of Escondido*, 139 S. Ct. at 503. Consequently, each of the Detectives is entitled to qualified immunity on this issue.

## VIII. CONCLUSION

As the District Court confirmed, "Plaintiff's interrogation does not fall clearly within any of [the previously published] cases" nor does "there appear[ ] to be [any] case law determining whether the precise question 'Could I have an attorney? is equivocal….'" The complete absence of any prior precedent confirms that the contours of Plaintiff Tobias's rights were absolutely not "clearly established." To hold the Detectives liable for failing to comply with standards that did not exist would eviscerate the protections afforded by the qualified immunity doctrine while disregarding the Supreme Court's instruction on these issues. Accordingly, the Detectives respectfully request the Court grant this appeal and confirm that each of the Detectives is entitled to qualified immunity.

Dated: February 22, 2019       ORBACH HUFF SUAREZ & HENDERSON

By:   /s/ Kevin E. Gilbert
      Kevin E. Gilbert
      Attorney for Defendants-Appellants
      DETECTIVES MICHAEL ARTEAGA,
      JEFF CORTINA, JOHN MOTTO and
      JULIAN PERE

**STATEMENT OF RELATED CASES**

A separate appeal has been filed by Defendant Daniel East, L.A. School

Police Officer, in Case No. 18-56245, before the United States Court of Appeals

for the Ninth Circuit. Both this appeal and Defendant East's appeal originate from

the same MSJ Order by the District Court. However, the legal issues raised in the

respective appeals are discrete and independent of one another.

Dated: February 22, 2019       ORBACH HUFF SUAREZ & HENDERSON

By:   /s/ Kevin E. Gilbert
         Kevin E. Gilbert
         Attorney for Defendants-Appellants
         DETECTIVES MICHAEL ARTEAGA,
         JEFF CORTINA, JOHN MOTTO and
         JULIAN PERE

# CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6), this Opening Brief is proportionately spaced using Microsoft Word in Times New Roman font, and has a typeface of 14 points or more, and, pursuant to Cir. R. 32-1 and Fed. R. App. P. 32(a)(7)(B), consists of 7,540 words.

February 22, 2019     By: /s/ Kevin E. Gilbert
            Kevin E. Gilbert

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, I electronically filed the foregoing "**APPELLANTS' OPENING BRIEF**" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system.

I certify that all the participants in the case are registered Appellate Electronic Filing users and will be served via the Appellate Electronic Filing system.

February 22, 2019                          By: /s/ Kevin E. Gilbert
                                               Kevin E. Gilbert