Case No. 18-56360

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

ART TOBIAS,

Plaintiff-Appellee,

v.

MICHAEL ARTEAGA, Detective No. 32722; et al.,

Defendants-Appellants,

and

CITY OF LOS ANGELES; et al.,

Defendants.

---

On Appeal from the United States District Court,
Central District of California,
Case No. 17-cv-01076-DSF-AS, Hon. Dale S. Fischer

---

**APPELLANTS' REPLY BRIEF**

---

Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
ORBACH HUFF SUAREZ + HENDERSON
1901 Harrison Street, Suite 1630
Oakland, CA 94612
Telephone: (510) 999-7908
Facsimile: (510) 999-7918

Attorney for Defendants-Appellants
DETECTIVES MICHAEL ARTEAGA, JEFF
CORTINA, JOHN MOTTO and JULIAN PERE

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   THE DETECTIVE DEFENDANTS' APPEAL IS PROPERLY
      BEFORE THIS COURT ................................................................ 3

III.  QUALIFIED IMMUNITY IS APPLICABLE GIVEN THE
      ABSENCE OF ANY PRIOR PRECEDENT TO CLEARLY
      ESTABLISH THE CONTOURS OF PLAINTIFF'S RIGHTS ..................... 7

      A.    Tobias Confuses That a Clearly Established Right is Not
            One of High Generality ......................................................... 8

      B.    Plaintiff Has Not Identified Any Precedent Which Clearly
            Establishes His Passing Statement Constituted an Unequivocal
            Request for Counsel ............................................................. 10

      C.    Plaintiff's Claims of a Coercive Interrogation Are Similarly
            Unsupported by Then-Existing Precedent ............................... 16

IV.   CONCLUSION ............................................................................ 23

STATEMENT OF RELATED CASES ..................................................... 24

CERTIFICATE OF COMPLIANCE ....................................................... 25

CERTIFICATE OF SERVICE .............................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Gomez,*
185 F.3d 995 (9th Cir. 1999) ............................................................... 12

*Anderson v. Creighton,*
483 U.S. 635 (1987) ........................................................................... 2

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ............................................................... 2, 7, 9, 15

*Bram v. United States,*
168 U.S. 532 (1897) ............................................................................. 20

*Brosseau v. Haugen,*
543 U.S. 194 (2004) (per curiam) ...................................................... 21

*Chavez v. Martinez,*
538 U.S. 760 (2003) ............................................................................. 17

*City and County of San Francisco v. Sheehan,*
135 S. Ct. 1765 (2015) ................................................................... 8, 21

*City of Escondido v. Emmons,*
139 S. Ct. 500 (2019) .............................................. 2-3, 8, 9, 14, 21

*Clark v. Murphy,*
331 F.3d 1062 (9th Cir. 2003) ...................................................... 13-14

*Cooper v. Dupnik,*
963 F.2d 1220 (9th Cir. 1992) .................................................... 20, 22

*Crowe v. County of San Diego,*
608 F.3d 406 (9th Cir. 2010) ............................................................. 18

*Davis v. United States,*
512 U.S. 452 (1994) ..................................................................... 11, 13

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) .......................................................... 3, 9, 10, 22

*Groh v. Ramirez*,
540 U.S. 551 (2004) ................................................................ 2

*Guarino v. Brookfield Township Trustees*,
980 F.2d 399 (6th Cir. 1992) ................................................ 17

*Hagans v. Franklin County Sheriff's Office*,
695 F.3d 505 (6th Cir. 2012) ................................................ 21

*Hope v. Pelzer*,
536 U.S. 730 (2002) ............................................................. 2, 9

*In re Art T.*,
234 Cal. App. 4th 335 (2015) .......................................... 11, 12

*In re Gault*,
387 U.S. 1 (1967) ................................................................ 8, 9

*Isayeva v. Sacramento Sheriff's Dep't*,
872 F.3d 938 (2017) ........................................................... 5, 15

*Jacobellis v. Ohio*,
378 U.S. 184 (1964) ............................................................... 10

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996) ................................................ 17

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) (per curiam) ................................ 3, 8, 14, 18

*Luna v. Lamarque*,
400 F. App'x 169 (9th Cir. 2010) ........................................ 12

*Malley v. Briggs*,
475 U.S. 335 (1986) ................................................................ 2

*Malloy v. Hogan*,
   378 U.S. 1 (1964) ...................................................................... 19-20

*Minnick v. Mississippi*,
   498 U.S. 146 (1990) ...................................................................... 12

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ...................................................................... 4, 5

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) .................................................................... 8, 21

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...................................................................... 1, 2

*People v. Roquemore*,
   131 Cal. App. 4th 11 (2005) ......................................................... 13

*Richards v. Combined Ins. Co.*,
   55 F.3d 247 (7th Cir. 1995) .......................................................... 17

*Robinson v. Borg*,
   918 F.3d 1387 (9th Cir. 1990) ...................................................... 12

*Rodriguez v. Swartz*,
   899 F.3d 719 (2018) ...................................................................... 11

*Scott v. Harris*,
   550 U.S. 372 (2007) ...................................................................... 5, 6, 7

*Shafer v. County of Santa Barbara*,
   868 F.3d 1110 (9th Cir. 2017) ...................................................... 9, 10

*Shedelbower v. Estelle*,
   885 F.2d 570 (9th Cir. 1989) ........................................................ 12, 13

*Smith v. Illinois*,
   469 U.S. 91 (1984) ........................................................................ 12

*Spady v. Bethlehem Area School District*,
  800 F.3d 633 (3d Cir. 2015) ............................................................ 21

*Stanton v. Sims*,
  134 S. Ct. 3 (2013) ......................................................................... 1

*Stoot v. City of Everett*,
  582 F.3d 910 (9th Cir. 2009) ..................................................... 19, 20

*United States v. Doe*,
  60 F.3d 544 (9th Cir. 1995) ............................................................ 13

*United States v. Bautista-Avila*,
  6 F.3d 1360 (9th Cir. 1993) ............................................................ 19

*United States v. De La Jara*,
  973 F.2d 746 (9th Cir. 1992) ..................................................... 12, 13

*United States v. Harrison*,
  34 F.3d 886 (9th Cir. 1994) ............................................................ 18

*United States v. Okafor*,
  285 F.3d 842 (9th Cir. 2002) .......................................................... 19

*United States v. Sablotny*,
  21 F.3d 747 (7th Cir. 1994) ............................................................ 19

*White v. Pauly*,
  137 S. Ct. 548 (2017) ....................................................................... 2

## Codes

42 U.S.C. § 1983 ................................................................... 1, 18, 22

## Rules

Fed. R. App. P. 32 ............................................................................ 25

# I.    INTRODUCTION

Contrary to Plaintiff Art Tobias' ("Plaintiff" or "Tobias") arguments, this appeal requests the Court address a purely legal issue. Namely, whether the law was clearly established at the time of Plaintiff's interrogation that any reasonable detective should have known that the complained of actions (Plaintiff's alleged invocation of counsel and/or the interrogation tactics utilized by the Detective Defendants which Plaintiff contends were coercive) could violate Plaintiff's rights.

Notwithstanding Plaintiff's impassioned opinions to the contrary, there are simply no *material* factual disputes to preclude this Court issuing a legal determination of whether Detectives Arteaga, Cortina, Motto and Pere ("Detectives" or "Defendants") are entitled to qualified immunity. Plaintiff appears to conflate the differing standards for opposing a motion for summary judgment with the standard of review of discrete legal issues on appeal.

Plaintiff's arguments appear to be predicated upon a misunderstanding of the purpose and application of qualified immunity. In the context of 42 U.S.C. § 1983 claims, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity gives government

1

officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Indeed, the qualified immunity protections apply regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). The linchpin of qualified immunity is the reasonableness of the official's conduct evaluated in the particularized circumstances with which the official is confronted. *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987).

Significantly, the U.S. Supreme Court has consistently reiterated that "clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). In fact, officials are entitled to "fair notice" or "fair warning" that their conduct violates a federally protected right. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Given this requirement, existing precedent must place the constitutional issue with respect to the official's conduct "beyond debate" in order to overcome application of the qualified immunity protections. *al-kidd*, 563 U.S. at 741. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 504

(2019); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153-54 (2018) (per curiam); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018).

This is the focus of Defendants' appeal – whether the state of the law was sufficiently defined such that any reasonable officer would clearly understand that the alleged conduct was improper. Specifically, no case has ever clearly established whether the phrase "Could I have an attorney, because that's not me" constitutes an unequivocal request for legal counsel. Similarly, no published case or law has ever clearly defined what combination of approved interrogation tactics constitute a coercive interrogation. Notably, Plaintiff's Answering Brief fails to cite any preexisting precedent that delineates the precise contours of Plaintiff's rights. Consequently, the Detectives are entitled to qualified immunity in response to Plaintiff's claims of 1) being denied legal counsel, and 2) being subjected to a coercive interrogation.

## II. DEFENDANTS' APPEAL IS PROPERLY BEFORE THIS COURT

Like Sisyphus pushing the stone up the hill only to have it roll back down, Plaintiff again attempts to argue that Defendants' appeal is frivolous and should not be decided by this Court. However, Plaintiff's arguments on this issue have already been rejected by both the District Court and this Court.

As was articulated by the District Court: "Where a defendant appeals the denial of summary judgment on qualified immunity grounds, the Court is divested of jurisdiction to proceed with the trial, in the absence of a determination that the appeal is frivolous." More importantly, the District Court expressly concluded that "Having reviewed the parties' briefs, the Court concludes the appeals are not frivolous. Plaintiff's motions are DENIED." November 13, 2018, Order Denying Plaintiff's Motion to Certify Appeals as Frivolous. Dkt. 244.

Hoping for a different result, Plaintiff filed a similar motion with this Court which advanced the same arguments. Thereafter, this Court issued its March 26, 2019, Order which denied Plaintiff's motion to dismiss. *See* Dkt. 27 entered in the related case, United States Court of Appeals for the Ninth Circuit, Case No. 18-56245.

Despite two separate courts rejecting Plaintiff's arguments, he again attempts to argue that questions of fact preclude this appeal. Plaintiff's Answering Brief ("AB") at 28, *citing Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985). Tobias, however, misunderstands the qualified immunity analysis and conflates "consideration of the facts" with a "dispute of facts." In *Mitchell,* the Supreme Court addressed the consequence of factual disputes in the qualified immunity context:

a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated. [citation omitted] ***An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts***, nor even determine whether the plaintiff's allegations actually state a claim. ***All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions*** or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took. [footnote omitted] To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief . . . . the Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue.

*Id.* at 527-29.

More recently, this Court has confirmed that the "existence of a genuine dispute about the reasonableness of an officer's [action] does not preclude granting qualified immunity or eliminate any basis for an immediate appeal of denial of qualified immunity." *Isayeva v. Sacramento Sheriff's Dep't,* 872 F.3d 938, 945 (2017).

While the facts are taken in the light most favorable to the nonmoving party, it does not mean that Tobias' biased interpretation must be blindly followed. In *Scott v. Harris,* 550 U.S. 372 (2007), the Supreme Court overturned a denial of an officer's motion for summary judgment on the issue of qualified immunity where

the lower courts had taken plaintiff's alleged facts as true, when those facts

"blatantly contradicted" the record, i.e. a video depicting the entire police car chase

at issue.

> When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could
> believe it, a court should not adopt that version of the facts for
> purposes of ruling on a motion for summary judgment.

> That was the case here with regard to the factual issue whether
> respondent was driving in such fashion as to endanger human life.
> Respondent's version of events is so utterly discredited by the record
> that no reasonable jury could have believed him. The Court of
> Appeals should not have relied on such visible fiction; it should have
> viewed the facts in the light depicted by the videotape.

*Id.* at 380-81.  Here, the entirety of Plaintiff's custodial interrogation was captured

on video and has been presented to the Court.  Defendants' Excerpts of Record

("ER") 553-556.  While there may be disputes as to the interpretation of certain

actions during that interrogation, such issues do not amount to factual disputes.

The issue is and always has been whether the lawfulness of the Detectives' actions

were clearly established.

In sum, while this Court must consider the facts in addressing the qualified

immunity questions, there is no dispute about what occurred during Tobias'

interrogation.  Only questions of law remain – whether the state of the law on each

issue was clearly established at the time of Plaintiff's interrogation such that the

Detectives should have known that their conduct could violate Tobias' rights. Thus, Defendants' appeal is properly before this Court.

## III. QUALIFIED IMMUNITY IS APPLICABLE GIVEN THE ABSENCE OF ANY PRIOR PRECEDENT TO CLEARLY ESTABLISH THE CONTOURS OF PLAINTIFF'S RIGHTS

In addition to misinterpreting the applicable legal standard for a qualified immunity analysis, Plaintiff has taken significant liberties in determining which "facts" he deems relevant. While this Court determines the relevant set of facts in analyzing whether qualified immunity is applicable, it will only rely upon the inferences that are supportable by the record. *Scott*, 550 U.S. at 381. Nowhere in Plaintiff's Answering Brief does he cite to any "existing precedent [that] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Rather, Plaintiff cites to irrelevant facts to paint an impassioned story of his alleged victimization at the hands of the Detectives.

Ultimately, Tobias has failed to carry his burden to demonstrate that the state of the law was clearly established such that the Detectives in this case would have understood that that their actions were potentially unlawful. As such, Detectives are entitled to qualified immunity and the District Court's ruling must be reversed.

**A.      Tobias Confuses That a Clearly Established Right is Not One of High Generality**

Tobias summarily alleges that the Detectives *should have known* their conduct violated his rights.  However, Plaintiff's contention is in conflict with the Supreme Court's recent tutelage to avoid analyzing clearly established law at a high level of generality.  *City of Escondido*, 139 S. Ct. at 503; *Kisela*, 138 S. Ct. at 1153-54; *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015); *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015).

Instead, Plaintiff takes general propositions of law and opines that the law (and his corresponding rights) was clearly established.  For example, Plaintiff argues that "Clearly established law provided Detectives were required to exercise great care in interrogating a 13-year old but they refused; preferring instead to relentlessly interrogate Tobias as an adult."  AB at 50.  The term "greatest care," however, is nothing more than a generality.  *See In re Gault,* 387 U.S. 1, 55 (1967).[1]  Nowhere is this term further defined, nor does Tobias ever link the

---

[1] In fact, the term "greatest care" is nothing more than dicta:

> We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique -- but not in principle -- depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible

Detectives' specific actions with any violation of "greatest care" as established by then-existing precedent.

The analysis of whether a right is "clearly established" cannot be highly generalized to mean a right free from unlawful violations, as Tobias posits. Instead, "the clearly established right must be defined with specificity." *City of Escondido*, 139 S. Ct. at 503. In other words, an officer must have "fair warning" that his conduct is improper (*Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) and requires that existing precedent must have placed the statutory or constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741; *Wesby*, 138 S. Ct. at 589. "Case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). In fact, "a body of relevant case law is usually necessary to clearly establish the answer . . . ." *Wesby*, 138 S. Ct. at 590.

Tobias' arguments miss this fundamental premise. While it is true that there need not be an exact case on point, there must be *something* more than mere

---

reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair. *In re Gault*, 387 U.S. at 55.

generalized law to put the Detectives on notice that their conduct could violate Plaintiff's rights. Tobias' argument is equivalent to a "I'll know it when I see it" standard, which clearly cannot be said to have put the Detectives on notice in this case. *Jacobellis v. Ohio,* 378 U.S. 184, 197 (1964) (J. Stewart, concurring). Even assuming arguendo that the Detectives violated Tobias' constitutional rights, Tobias' legal arguments do not proffer any clearly established law sufficient to alert the Detectives that their actions *in this case* could constitute a violation of Tobias' constitutional rights.

**B.** **Plaintiff Has Not Identified Any Precedent Which Clearly Establishes His Passing Statement Constituted an Unequivocal Request for Counsel**

Noticeably absent from Plaintiff's Answering Brief is any prior precedent that would have clearly established the exact contours of Plaintiff's rights. "Case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer*, 868 F.3d at 1117. "[A] body of relevant case law is usually necessary to clearly establish the answer . . . ." *Wesby*, 138 S. Ct. at 590.

Despite such requirements, Plaintiff fails to proffer any case law or other precedent that would have put the Detectives on notice that Tobias' statement

"Could I have an attorney, because that's not me" was an unequivocal invocation of his right to counsel.[2]  Rather, Tobias addresses this issue only at a high level of generality.  Tobias argues that "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation."  AB at 53, quoting *Davis v. United States,* 512 U.S. 452, 458 (1994).  This is merely restating the right at issue (which is not in dispute), not the factual circumstances that would violate that right.

Plaintiff then concludes – in summary form – that "[n]o reasonable officer could think *Davis* was unsatisfied in the context here" and then proceeds to describe the facts in the case at bar, never citing to *any* case that is factually similar to the circumstances here.  While it is true that Tobias need not have invoked his

---

[2] While the Detectives do not contest for purposes of this appeal that this statement may have been an invocation of Tobias' request for counsel, this case is far from being the "obvious" case as Tobias argues.  In the "obvious" case cited by Plaintiff, qualified immunity was denied to the border patrol agent because the agent's conduct (shooting and killing an unarmed teenager for no reason) was so outrageous there could be no question that a reasonable officer would have known that his conduct was crossing the line. *See, i.e., Rodriguez v. Swartz,* 899 F.3d 719, 734 (2018).  It can hardly be said that Tobias' single reference to an attorney – interrupting Detective Pere mid-sentence – could be an "obvious" request for counsel.  The Detectives were not the only ones to believe that Tobias had not invoked his right, as the juvenile criminal court similarly agreed that Tobias' statement was not an invocation of his right to counsel. *In re Art T.,* 234 Cal. App. 4th 335, 344 (2015).

right to counsel with "the discrimination of an Oxford don," there must be *something* more than a generality that put the Detectives on notice.

Tobias cites to several cases for the proposition that the Detectives were on notice that Tobias' statement was an unequivocal request for counsel. *See, generally, Alvarez v. Gomez,* 185 F.3d 995, 998 (9th Cir. 1999) ("Can I get an attorney right now, man?" held unequivocal); *United States v. De La Jara,* 973 F.2d 746, 750 (9th Cir. 1992) ("Can I call my attorney" held unequivocal); *Smith v. Illinois,* 469 U.S. 91, 93 (1984) ("Uh, yeah. I'd like to do that." held to be an unequivocal request after being advised of his right to counsel); *Minnick v. Mississippi,* 498 U.S. 146, 148 (1990) ("Come back Monday when I have a lawyer" held unequivocal); *Shedelbower v. Estelle,* 885 F.2d 570, 571-73 (9th Cir. 1989) ("You know, I'm scared now. I think I should call an attorney." held unequivocal); *Robinson v. Borg,* 918 F.3d 1387, 1389 (9th Cir. 1990) ("I have to get me a good lawyer, man. Can I make a phone call?" held unequivocal); *Luna v. Lamarque,* 400 F. App'x 169, 172 (9th Cir. 2010) ("it sounds like I need a lawyer. And I need help" held to be an invocation).

None of the above-referenced cases, however, used the phrase: "Could I have an attorney," which the District Court also acknowledged. ER 29. Although the court in *In re Art T.* expressed in dicta that Tobias' statement was more similar to "Can I have an attorney," as used in *Alvarez* and "Can I call my attorney" as was

used in *De La Jara*, there is a distinct difference between the word "can" and the word "could."  In modern usage, "can" constitutes a more direct request. *Merriam-Webster New Collegiate Dictionary*, 178 (11th ed. 2003) ("The use of *can* to ask or grant permission has been common since the 19th century. . . .").  Whereas, "could" is often used "as an alternative to *can* suggesting less force or certainty" in a request.  *Id.* at 284.  Even in the slang context, "can" is used to make a more immediate request ("can I go to the bathroom?").  Thus, Tobias' passing comment "Can I have an attorney, because that's not me" – especially in the context of the conversation at the time – is less certain and more equivocal.

In fact, existing precedent supports Defendants' arguments.  For example, "[m]aybe I should talk to a lawyer" (*Davis v. United States,* 512 U.S. 452, 458-59 (1994)) was held to be equivocal and insufficient to constitute a request for legal counsel.  A similar result was reached by the Court in *United States v. Doe,* 60 F.3d 544, 546 (9th Cir. 1995), wherein it concluded "[m]aybe I ought to see an attorney" was likewise equivocal.  Likewise, the statement "Can I call a lawyer or my mom to talk to you?" was held to be equivocal.  *People v. Roquemore,* 131 Cal. App. 4th 11 (2005).

The reality is that all of these phrases, whether held equivocal or not, are very similar.  *Compare Shedelbower v. Estelle*, 885 F.2d 570, 571 (9th Cir. 1989) ("I think I should call an attorney." – unequivocal) *with Clark v. Murphy*, 331 F.3d

13

1062, 1071 (9th Cir. 2003) ("I think I would like to talk to a lawyer" held equivocal).  More importantly, however, is that any such analysis ignores the tutelage from the High Court which requires the contours of Plaintiff's right to be "clearly established."  To deny qualified immunity, "existing precedent must place the lawfulness of the particular action *beyond debate*." *City of Escondido*, 139 S. Ct. at 504, emphasis added.  Furthermore, "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any reasonable official in the defendant's shoes* would have understood that he was violating it.'" *Kisela*, 138 S. Ct. at 1153, emphasis added. Plaintiff, however, never explains how any of his cited cases are factually similar and place the lawfulness of the Detectives' conduct "beyond debate."  Nor does he acknowledge that learned jurists cannot agree on whether Plaintiff's lone comment was unequivocal.

None of the cases proffered by Plaintiff present a similar factual scenario – where an officer is explaining the defendant's ability to make a statement in his own words – who is interrupted mid-sentence but continues his train of thought.  In relevant portion, the exchange between Plaintiff and Detective Pere is as follows:

TOBIAS: "That's not me.  I don't know how else to tell you.  That's not me."

PERE:  "Okay.  Well, I – you know what?  We're here to speak to you to get your statement.  Now, if your statement is that that's not you, don't worry.  We're going to write it down just the way you said.  That's not –

[INTERRUPTION BY TOBIAS] "Could I have an attorney, because that's not me?"

PERE: [continuing his train of thought] "But – okay.  No, don't worry.  You'll have the opportunity [to make your statement]."

Plaintiff's Excerpts of Record ("PER") 1394-1395, ER 553-554 at time-stamp 17:06.

Plaintiff has not carried his burden to demonstrate that the contours of his right was clearly established by existing precedent.  *Isayeva*, 872 F.3d at 946 ("Once the official pleads qualified immunity, the burden is on the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct.").

Ultimately, if the case law is murky and differing courts cannot even agree that Tobias' comment was an unequivocal request for counsel, then "existing precedent [has not] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.  Consequently, the Detectives are entitled to qualified immunity in response to Plaintiff's claims that he was denied legal counsel.

### C. Plaintiff's Claims of a Coercive Interrogation Are Similarly Unsupported by Then-Existing Precedent

Next, Plaintiff argues that the Detectives' actions and tactics during his custodial interrogation were improper and resulted in a coercive interrogation. In support, Plaintiff's Answering Brief cites to a laundry list of alleged improper tactics used during his interrogation. Without any analysis, Plaintiff postulates that the Detectives' alleged conduct resulted in a coercive interrogation leading to the fabrication of evidence in violation of his Fifth and Fourteenth Amendment rights. AB 33-52. Plaintiff, however, never supports these generalities with any citations to the record. Nor does he cite to any existing precedent which would clearly establish that any specific action, or the combination of multiple tactics, could be unlawful.

Rather, Tobias cites only to his arguments in opposition to the Detectives' motion for summary judgment before the District Court. *See, e.g.*, AB 5 n.1 ("Citations to paragraphs refer to Tobias's response to Detectives statement of the facts") and 48 (facts that Detectives allegedly ignored Plaintiff's age are purportedly found at "2 ER ¶¶ 140, 166-68," yet the references are themselves

unintelligible).[3]  Plaintiff rarely, if ever, makes any citation to the Excerpts of

Record or Plaintiff's Excerpts of Record directly.

> As other courts have noted, "it is not our task, or that of the district
> court, to scour the record in search of a genuine issue of triable fact.
> We rely on the nonmoving party to identify with reasonable
> particularity the evidence that precludes summary judgment."
> *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995); see
> also *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th
> Cir. 1992) ("[The nonmoving party's] burden to respond is really an
> opportunity to assist the court in understanding the facts. But if the
> nonmoving party fails to discharge that burden - for example, by
> remaining silent - its opportunity is waived and its case wagered.").
> The Keenans' counsel certainly cannot be accused of remaining silent,
> but by submitting an ER that obfuscates rather than promotes an
> understanding of the facts, he has assisted neither the court nor his
> clients.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Contrary to Tobias' generalizations, several of his other alleged facts are not

violations of the law.  For example, Tobias alleges that the Detectives "conducted

inculpatory custodial questioning in the absence of any *Miranda* warnings," yet he

never offers any evidence to suggest that the pre-*Miranda* discussions were

introduced, utilized or relied upon as part of his conviction.  To violate Plaintiff's

rights, the compelled statements must have been utilized to obtain the conviction.

*Chavez v. Martinez*, 538 U.S. 760 (2003) (mere coercion does not create a cause of

---

[3] For example, paragraph 166 confusingly states:  "Ex. 13, Tobias Interrogation
Transcript at Tobias_PLA 9, 63, 71-72; Ex. 12, Tobias Interrogation Video."
There is no "PLA" designation in the interrogation transcript attached in ER or
PER and similarly there are no identifications of any pages or lines.  Similarly, the
interrogation video is 90 minutes long, but Plaintiff points to no specific point in
the video to support his claim.

action under section 1983 for a violation of the Self-Incrimination Clause, absent use of the compelled statement in a criminal case); *see also, Crowe v. County of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010).  However, only the evidence obtained during Detective Arteaga's questioning (which was conducted only after Plaintiff received his *Miranda* admonishment) was used in Tobias' criminal case. ER 554, 556.  Tobias fails to cite to even a scintilla of evidence to show that any pre-*Miranda* information was used against him in his criminal case.

Next, Tobias repeatedly claims that the Detectives "bulldozed his right to silence," yet Tobias does not cite even a single case affirming that his conduct and/or comments amounted to an unequivocal invocation of his right to remain silent.  Instead, Tobias cites to mere generalities; i.e., that officers may not "suggest that a suspect's exercise of the right to remain silent may result in harsher treatment by a court or prosecutor."  AB 43-44, *citing United States v. Harrison,* 34 F.3d 886, 891-92 (9th Cir. 1994).  Tobias does not connect this statement of law to any fact in this case, nor does he establish that his statements invoked his right to silence.  Even if he had made such a connection, he has still failed to demonstrate that his conduct and/or statements were consistent with those identified in prior precedent such that any reasonable official in the Defendants' shoes would have understood their conduct constituted a violation of Plaintiff's rights.  *Kisela*, 138 S. Ct. at 1153.

Plaintiff seemingly focuses on alleged "threats" by the Detectives.  *See, generally,* AB 15-16.  Tobias' creative interpretation of the facts, however, does not amount to a violation of the law.  In fact, the Detectives' comments that murder charges could potentially be filed against Tobias cannot be considered coercive.  *Stoot v. City of Everett*, 582 F.3d 910, 928-29 (9th Cir. 2009); *United States v. Okafor*, 285 F.3d 842, 846-47 (9th Cir. 2002) (telling suspect he would be subject to 10-20 years in prison did not render confession involuntary).  Officers are allowed to recite the sentence a suspect may receive if found guilty.  *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993); *United States v. Sablotny*, 21 F.3d 747, 752-53 (7th Cir. 1994) (officer may use fear of prison).  Consequently, such comments that if Tobias failed to tell the truth (*not* that if he remained silent, as Plaintiff contends) he could get the book thrown at him and the court and jury could view him as a hardened gangster.  AB 15-16.  None of the Detectives' actions were coercive.

Even if Tobias could demonstrate that the Detectives' actions were coercive, Tobias again fails to provide any case law indicating that the Detectives should have known that the specific actions in this case were unlawful.  Instead, Tobias again relies on mere generalities that a "confession 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'"  AB 41, citing *Malloy v.*

*Hogan*, 378 U.S. 1, 7 (1964), quoting *Bram v. United States,* 168 U.S. 532, 542-43 (1897).  Tobias never provides any then-existing precedent that making comments similar to the ones made in this case would violate clearly established law.

Further, Plaintiff alleges that the Detectives made improper threats about his family to coerce him.  AB 16-17.  Yet, the Detectives never made threats of harm against Tobias' family.  The Detectives simply restated a truth – i.e., that his family would have to testify in his case and that by not being honest, he would involve them in the criminal proceedings against him.  AB 16-17.  Moreover, Tobias' cited case law never directly connects the Detectives' comments regarding Tobias' family to actual violations or coercive tactics.  AB 42.  Tobias also never cites to any precedent sufficient to put the Detectives on notice that telling Tobias that his family could be witnesses or otherwise involved in his criminal trial could be coercive.  AB 42.

While Tobias' emotional pleas paint a picture that the Detectives' tactics in the interrogation could be considered coercive, a closer examination of those statements fails to support Tobias' opinions.  Moreover, Tobias cannot show that the law was clearly established to have put Defendants on notice that their conduct would have amounted to coercion.

Tobias eventually attempts to distinguish *Stoot* and analogize *Cooper* (*Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992)) and *Crowe* with more mere

20

generalities, citing simply that "Well before 2012, this Court clearly held that officers engaged in similar conduct are not entitled to qualified immunity." AB 51. Again, however, Tobias fails to directly reference the similar factual circumstances in those cases or to reference any other laws that would have clearly established that the *specific* actions in this case were unlawful.

The analysis provided by Tobias is directly contrary to the Supreme Court's direction; to not analyze clearly established law at too high a level of generality. *City of Escondido*, 139 S. Ct. at 503; *Mullenix*, 136 S. Ct. at 311; *City and County of San Francisco*, 135 S. Ct. at 1775-76. Rather, any analysis must evaluate qualified immunity "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Put another way, Plaintiff must enunciate "a concrete, particularized description of the right." *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012); *Spady v. Bethlehem Area School District*, 800 F.3d 633, 638 (3d Cir. 2015) (the right at issue must be framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context").

As the trial court concluded:

> *Plaintiff's interrogation does not fall clearly within any of these cases*. At thirteen, Plaintiff is the youngest, and experienced some of the interrogation tactics used in *Cooper* and *Crowe*. On the other hand, Plaintiff's interrogation lacked some of the extreme conduct found in those cases. See, e.g., id. at 431-32 (describing the interrogations as "brutal and inhumane," "psychological torture," and an "extreme form of child abuse"); Cooper, 963 F.2d at 1248 (describing Cooper's mistreatment as "sophisticated psychological torture").

ER 14-15, emphasis added.  There are simply no cases on point to have put the Detectives on notice that their combined interrogation tactics could be collectively coercive.

While the Detectives' interrogation tactics may seem harsh in the serenity of a courtroom and distanced from Plaintiff's murder investigation, the doctrine of qualified immunity exists to protect those officers that may have been mistaken on the applicable facts, on what conduct was lawful or even a combination of both. Indeed, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Wesby, 138 S. Ct. at 589.

The District Court has expressly concluded that "Plaintiff's interrogation does not fall clearly within any of [the then-existing precedent]." ER 14.   The District Court's conclusion confirms that the contours of Plaintiff's rights regarding his custodial interrogation were not clearly defined.  Moreover, Plaintiff has failed to offer any legal authorities to the contrary.  Accordingly, each of the

Detectives is entitled to qualified immunity from Plaintiff's claims that his interrogation was coercive.

## IV.     CONCLUSION

To hold the Detectives liable for failing to comply with standards that did not exist would eviscerate the protections afforded by the qualified immunity doctrine.  Accordingly, the Detectives respectfully request the Court grant this appeal and confirm that each of the Detectives is entitled to qualified immunity.

Dated:  June 3, 2019         ORBACH HUFF SUAREZ + HENDERSON

By:   /s/ Kevin E. Gilbert        
      Kevin E. Gilbert
      Attorney for Defendants-Appellants
      DETECTIVES MICHAEL ARTEAGA,
      JEFF CORTINA, JOHN MOTTO and
      JULIAN PERE

# STATEMENT OF RELATED CASES

A separate appeal has been filed by Defendant Daniel East, L.A. School Police Officer, in Case No. 18-56245, before the United States Court of Appeals for the Ninth Circuit. Both this appeal and Defendant East's appeal originate from the same MSJ Order by the District Court. However, the legal issues raised in the respective appeals are discrete and independent of one another.

Dated: June 3, 2019   ORBACH HUFF SUAREZ + HENDERSON


By: /s/ Kevin E. Gilbert
   Kevin E. Gilbert
   Attorney for Defendants-Appellants
   DETECTIVES MICHAEL ARTEAGA,
   JEFF CORTINA, JOHN MOTTO and
   JULIAN PERE

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6), this Reply Brief is proportionately spaced using Microsoft Word in Times New Roman font, and has a typeface of 14 points or more, and, pursuant to Cir. R. 32-1 and Fed. R. App. P. 32(a)(7)(B), consists of 5,413 words.

Dated:  June 3, 2019                    By:  /s/ Kevin E. Gilbert
                                             Kevin E. Gilbert

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2019, I electronically filed the foregoing

"**APPELLANTS' REPLY BRIEF**" with the Clerk of the Court for the United

States Court of Appeals for the Ninth Circuit by using the Appellate Electronic

Filing system.

I certify that all the participants in the case are registered Appellate

Electronic Filing users and will be served via the Appellate Electronic Filing

system.


 Dated:  June 3, 2019                    By:  /s/ Kevin E. Gilbert
                                              Kevin E. Gilbert