Case No. 18-56360

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ART TOBIAS,

      *Plaintiff and Appellee*,

   vs.

MICHAEL ARTEAGA, Detective No. 32722, et al.,

      *Defendant and Appellants*,

CITY OF LOS ANGELES, et al.,

      *Defendants*.

On Appeal From The United States District Court
For The Central District of California
The Honorable Dale S. Fischer, Presiding Judge
Case No. 17-cv-01076-DSF-AS

## APPELLANTS DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, AND JULIAN PERE'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC
### [Fed. R. App. P., rules 35 & 40]

**GREINES, MARTIN, STEIN & RICHLAND LLP**
Timothy T. Coates, State Bar No. 110364
tcoates@gmsr.com
5900 Wilshire Boulevard, 12th Floor
Los Angeles, California 90036-3626
Telephone: (310) 859-7811 | Facsimile (310) 276-5261

**ORBACH HUFF SUAREZ & HENDERSON**
Kevin E. Gilbert, State Bar No. 209236
kgilbert@ohshlaw.com
6210 Stoneridge Mall Road, Suite 210
Pleasanton, California 94588
Telephone: (510) 999-7908 | Facsimile: (510) 999-7918
Attorneys for Defendants and Appellants
*DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, and JULIAN PERE*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| I. PANEL OR EN BANC REHEARING IS WARRANTED BECAUSE THE OPINION CONFLICTS WITH SUPREME COURT AUTHORITY CONCERNING QUALIFIED IMMUNITY AND THE DECISIONS OF THIS CIRCUIT, AS WELL AS OTHER CIRCUITS, ON WHAT CONSTITUTES AN EQUIVOCAL REQUEST FOR COUNSEL. | 3 |
| A. Detective Arteaga Is Entitled To Qualified Immunity Because The Opinion Identifies No Clearly Established Law Holding An Officer Liable For Interrogating A Suspect Whom The Officer Does Not Know Has Invoked The Right To Counsel. | 4 |
| B. All Appellants Are Entitled To Qualified Immunity Because No Clearly Established Law Would Have Put Them On Notice That Plaintiff's Statement Constituted An Unequivocal Request For Counsel. | 5 |
| 1. No clearly established law in the Ninth Circuit or California courts indicated that the statement was unequivocal. | 5 |
| 2. Other Circuits have found similar statements to be ambiguous and hence insufficient to constitute an unequivocal request for counsel under *Davis*. | 9 |
| CONCLUSION | 11 |
| CERTIFICATE OF COMPLIANCE | 12 |
| APPENDIX – MEMORANDUM | 13 |
| CERTIFICATE OF SERVICE | 29 |

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Alvarez v. Gomez*,
   185 F.3d 995 (9th Cir. 1999) ............................................... 7-8

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ............................................................ 3-4

*City and County of San Francisco v. Sheehan*,
   575 U.S. 600, 135 S. Ct. 1765 (2015) ................................... 3

*City of Escondido v. Emmons*,
   __ U.S. __, 139 S. Ct. 500 (2019) ....................................... 3-4

*Clark v. Murphy*,
   331 F.3d 1062 (9th Cir. 2003) ........................................... 1-2, 5

*Davis v. United States*,
   512 U.S. 452 (1994) ............................................................ 6-7

*Diaz v. Senkowski*,
   76 F.3d 61 (2d Cir. 1996) ..................................................... 2, 9

*District of Columbia v. Wesby*,
   __ U.S. __, 138 S. Ct. 577 (2018) ......................................... 3

*Dormire v. Wilkinson*,
   249 F.3d 801 (8th Cir. 2001) ................................................ 2, 9

*Fraher v. Patrick*,
   No. EDCV 06-1406-SVW (AGR), 2010 WL 532397
   (C.D. Cal. Feb. 9, 2010) ....................................................... 10

*Kisela v. Hughes*,
   __ U.S. __, 138 S. Ct. 1148 (2018) ...................................... 1, 3

*Lockyer v. Andrade*,
   538 U.S. 63 (2003) .................................................................. 1

# TABLE OF AUTHORITIES

**Page(s)**

*Lord v. Duckworth*,
  29 F.3d 1216 (7th Cir. 1994) .......................................... 2, 9

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .......................................................... 9

*Reichle v. Howards*,
  566 U.S. 658 (2012) .......................................................... 3

*Smith v. Endell*,
  860 F.2d 1528 (9th Cir. 1988) ........................................ 8

*Stanton v. Sims*,
  571 U.S. 3 (2013) .............................................................. 6

*Subdiaz-Osorio v. Humphreys*,
  947 F.3d 434 (7th Cir. 2020) ......................................... 2, 9

*United States v. Clark*,
  746 F. Supp. 2d 176 (D. Me. 2010) ............................... 10

*United States v. Cook*,
  No. 07–CR–6195 CJS, 2008 WL 728883 (W.D.N.Y. Mar. 17, 2008) ... 11

*United States v. de la Jara*,
  973 F.2d 746 (9th Cir. 1992) ........................................... 8

*United States v. Dixon*,
  No. 8:10–cr–135–T–30MAP, 2010 WL 5209359
  (M.D. Fla. Nov. 18, 2010) .............................................. 10

*United States v. Doe*,
  170 F.3d 1162 (9th Cir. 1999) ....................................... 2, 5

*United States v. Doe*,
  60 F.3d 544 (9th Cir. 1995) ........................................... 2, 6

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Eastman*,
    256 F. Supp. 2d 1012 (D.S.D. 2003)    11

*United States v. Fouche*,
    776 F.2d 1398 (9th Cir. 1985)    2, 5

*United States v. Gonzalez-Delgado*, 4:16-cr-259-AKK-TMP,
    2017 WL 874571 (N.D. Ala. Feb. 7, 2017), report and
    recommendation adopted, No. 4:16-cr-0259-AKK,
    2017 WL 840591 (N.D. Ala. Mar. 3, 2017)    10

*United States v. Havlik*,
    710 F.3d 818 (8th Cir. 2013)    2, 10

*United States v. Kelly*,
    329 F.3d 624 (8th Cir. 2003)    10

*United States v. Lee*,
    No. 3:19-CR-00052 JD, 2019 WL 8012668 (N.D. Ind. Dec. 11, 2019),
    report and recommendation adopted, No. 3:19-CR-052 JD-MGG,
    2020 WL 416265 (N.D. Ind. Jan. 27, 2020)    10

*United States v. Mohr*,
    772 F.3d 1143 (8th Cir. 2014)    10

*United States v. Pelle*,
    No. CRIM 05-407 JBS, 2006 WL 2528552 (D.N.J. Aug. 31, 2006)    11

*United States v. Tsosie*,
    709 F. App'x 447 (9th Cir. 2017)    2, 8

*United States v. Winsor*,
    549 F. App'x 630 (9th Cir. 2013)    2, 6

*United States v. Younger*,
    398 F.3d 1179 (9th Cir. 2005)    7-8

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Zamora*,
    222 F.3d 756 (10th Cir. 2000)      2, 9

*Wilson v. Layne*,
    526 U.S. 603 (1999)      9

## State Cases

*In re Art T.*,
    234 Cal. App. 4th 335 (2015)      5

*People v. Bacon*,
    50 Cal. 4th 1082 (2010)      6

*People v. Roquemore*,
    131 Cal. App. 4th 11 (2005)      6

*People v. Sauceda-Contreras*,
    55 Cal. 4th 203 (2012)      6

*People v. Simons*,
    155 Cal. App. 4th 948 (2007)      6

# INTRODUCTION

Appellants, Detectives Michael Arteaga, Jeff Cortina and Julian Pere seek panel rehearing and rehearing en banc, of the court's February 25, 2020 memorandum opinion, insofar as the court affirmed the denial of qualified immunity on plaintiff's *Miranda* violation claim. The opinion concluded that plaintiff's statement—"Could I have an attorney? Because that's not me"— constituted an unequivocal request for counsel that barred further interrogation. (Opn. p. 5.) Rehearing is warranted because the opinion departs from the Supreme Court's decision in *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1153 (2018) (per curiam), and conflicts with the decisions of this Circuit as well as other Circuits finding similar statements to be equivocal.

Rehearing is warranted as to Detective Arteaga, because the opinion overlooks the fact that Arteaga was not present when plaintiff made the purported request for counsel to Cortina and Pere, and there is no evidence he was aware of the statement when he subsequently interrogated plaintiff and obtained a confession. Contrary to *Kisela*, the opinion points to no clearly established law that would put Arteaga on notice the he could be held liable for unknowingly interrogating someone who had invoked the right to counsel.

Rehearing is warranted as to all defendants, because, contrary to *Kisela*, the opinion identifies no case with closely analogous facts that could clearly establish that plaintiff's statement constituted an unequivocal request for counsel. In *Clark v. Murphy*, 331 F.3d 1062, 1070 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), this Court acknowledged that this area of the law is murky, and that "[o]ur own precedent is not much help since it is somewhat inconsistent on what constitutes an equivocal request for a lawyer." The

opinion fails to address, and conflicts with the decisions of this court in *Clark*, *United States v. Doe*, 170 F.3d 1162, 1166 (9th Cir. 1999), *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir. 1985), *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995), *United States v. Winsor*, 549 F. App'x 630, 633 (9th Cir. 2013) and *United States v. Tsosie*, 709 F. App'x 447, 450 (9th Cir. 2017) which held similar statements to be equivocal. The opinion also directly conflicts with the Eighth Circuit's decision in *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) which held that "Could I call my lawyer?" was ambiguous and not an unequivocal request for counsel. It is also inconsistent with *Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996), *Subdiaz-Osorio v. Humphreys*, 947 F.3d 434, 448 (7th Cir. 2020), *Lord v. Duckworth*, 29 F.3d 1216, 1220 (7th Cir. 1994), *United States v. Zamora*, 222 F.3d 756, 766 (10th Cir. 2000) and *United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013), where the courts held similar statements to be equivocal.

Contrary to the opinion's conclusion, there was nothing straightforward or unequivocal about plaintiff's request for counsel, as demonstrated by numerous decisions of this court, California Courts, and the other Circuit courts. These are precisely the circumstances in which qualified immunity is warranted.

**I.    PANEL OR EN BANC REHEARING IS WARRANTED BECAUSE THE OPINION CONFLICTS WITH SUPREME COURT AUTHORITY CONCERNING QUALIFIED IMMUNITY AND THE DECISIONS OF THIS CIRCUIT, AS WELL AS OTHER CIRCUITS, ON WHAT CONSTITUTES AN EQUIVOCAL REQUEST FOR COUNSEL.**

The Supreme Court has made clear that "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. Officers are entitled to qualified immunity unless a prior rule *obviously resolve[d]* 'whether "the circumstances with which [the particular officer] was confronted"'" would violate the constitution. *District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 590 (2018) (emphasis added). To meet this standard, a court denying qualified immunity must "'identify a case'" holding that an "'officer acting under similar circumstances'" violated the constitution. *Id*. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). In other words, "existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Court has repeatedly reversed this court for departing from these principles—that is, for defining the right at issue too generally, and for finding the right "clearly established" without identifying a factually similar case. *E.g., City of Escondido v. Emmons*, __ U.S. __, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela*, 138 S. Ct. at 1152; *City and County of San Francisco v. Sheehan*, 575 U.S. 600,

135 S. Ct. 1765, 1775-76 (2015); *Ashcroft,* 563 U.S. at 742. That is what has occurred here, and requires correction by panel or en banc rehearing.

A.  **Detective Arteaga Is Entitled To Qualified Immunity Because The Opinion Identifies No Clearly Established Law Holding An Officer Liable For Interrogating A Suspect Whom The Officer Does Not Know Has Invoked The Right To Counsel.**

As noted in appellants' opening brief, it is undisputed that Detective Arteaga was not in the room when plaintiff made what the opinion characterizes as an unequivocal request for counsel, and there is no evidence that he was aware of the statement. (AOB pp. 9-10 (citing ER 402, 287, 296, 299).) As the Supreme Court held in *Emmons*, courts must analyze the conduct of individual defendants in evaluating qualified immunity, and cannot simply collectively reject the defense. 139 S. Ct. at 502-03 ("With respect to Sergeant Toth, the Ninth Circuit offered no explanation for its decision. The court's unexplained reinstatement of the excessive force claim against Sergeant Toth was erroneous—and quite puzzling in light of the District Court's conclusion that 'only Defendant Craig was involved in the excessive force claim' and that Emmons 'fail[ed] to identify contrary evidence'").

The opinion cites no case holding an officer liable for interrogating a suspect whom he does not know has invoked the right to counsel. Although, as noted below, appellants do not believe that plaintiff's single, passing statement constituted an unequivocal request for counsel, even if it could be so construed, there is no evidence that Arteaga was aware of it, and the absence of any case law imposing liability under these circumstances makes it clear that he is entitled to qualified immunity on the *Miranda* claim.

**B.** **All Appellants Are Entitled To Qualified Immunity Because No Clearly Established Law Would Have Put Them On Notice That Plaintiff's Statement Constituted An Unequivocal Request For Counsel.**

**1.** **No clearly established law in the Ninth Circuit or California courts indicated that the statement was unequivocal.**

In denying summary judgment on the *Miranda* claim, the district court acknowledged there was no case discussing whether "could I have an attorney" constituted an unequivocal request for counsel. (ER 14, 29.) And, of course, the state criminal trial court denied the motion to suppress, because it found that the passing statement was not an unequivocal request for counsel—a ruling reversed by the California Court of Appeal in an opinion that changed California law by directing that a suspect's age be taken into account in interpreting a request for counsel. *In re Art T.*, 234 Cal. App. 4th 335, 344, 354 (2015).

Prior to the panel decision here, no Ninth Circuit case had held that "could I have an attorney" constitutes an unequivocal request for counsel. Indeed, as appellants noted, numerous decisions of this court—none of which is addressed in the opinion—have found similar statements to be equivocal and insufficient to constitute a request for counsel:

- "I think I would like to talk to a lawyer." *Clark v. Murphy*, 331 F.3d at 1069, 1071.

- "What time will I see a lawyer?" *United States v. Doe*, 170 F.3d at 1166.

- I "might want to talk to a lawyer." *United States v. Fouche*, 776 F.2d at 1405.

- "Maybe [I] ought to see an attorney" *United States v. Doe*, 60 F.3d at 546.

*See also United States v. Winsor*, 549 F. App'x at 633 ("I think I'd like an attorney" and "Shouldn't I have an attorney here?" were equivocal, not unambiguous).

The decisions of the California appellate courts are also relevant in determining clearly established law. *Stanton v. Sims*, 571 U.S. 3, 9-10 (2013) (per curiam) ("It is especially troubling that the Ninth Circuit would conclude that Stanton was plainly incompetent—and subject to personal liability for damages—based on actions that were lawful according to courts in the jurisdiction where he acted"). California courts have also found similar statements to be equivocal:

- "If you can bring me a lawyer," then "that way I can tell you everything that I know and everything that I need to tell you and someone to represent me." *People v. Sauceda-Contreras*, 55 Cal. 4th 203, 219 (2012).

- "Can I call a lawyer or my mom to talk to you?" *People v. Roquemore*, 131 Cal. App. 4th 11, 24 (2005).

- "How long would it take for a lawyer to get here for me?" *People v. Simons*, 155 Cal. App. 4th 948, 955, 958 (2007).

- "I think it'd probably be a good idea for me to get an attorney." *People v. Bacon*, 50 Cal. 4th 1082, 1104-05 (2010).

As the Supreme Court held in *Davis v. United States*, 512 U.S. 452, 459 (1994), "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (Citations omitted; emphasis in original.) In *Davis*, the Court held that the statement, "[m]aybe I should talk to a lawyer" was insufficient to alert a reasonable police officer that the defendant was requesting counsel. *Id.* at 455, 459-62.

"Could I have an attorney?" is not unambiguous. On its face it could be nothing more than an inquiry as to whether appointed counsel would be available if wanted, and does not reflect and immediate desire to have counsel present.

The cases cited in the opinion are not to the contrary—none involves a single, passing statement of the sort at issue here.

The court cites *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) as holding that "Can I get an attorney right now, man?" was unequivocal. (Opn. p. 5.) As a threshold matter, unlike the statement here, the statement in *Alvarez* invoked an immediate clear desire for counsel, i.e., "right now." Moreover, courts have recognized that *Alvarez* did not hold that this single statement constituted an unequivocal request for counsel; rather, *Alvarez* involved multiple requests for counsel.

In *United States v. Younger*, 398 F.3d 1179, 1187-88 (9th Cir. 2005), the court found that the defendant's statement, "[b]ut, excuse me, if I am right, I can have a lawyer present through all this, right?," to be ambiguous. It distinguished *Alvarez*, noting:

> [In *Alvarez*] we concluded that, *when considered together*, a suspect's three questions—"'(1) Can I get an attorney right now, man?; (2) You can have attorney right now?; and (3) Well, like right now you got one?'"—constituted an unambiguous request for counsel.

*Id.* at 1187 (emphasis added); *see also*, *id.* at 1188 ("it was 'Alvarez's thrice-repeated questions, when considered together,' that led this court to conclude the questions constituted an unequivocal request for an attorney").

In *United States v. Tsosie*, 709 F. App'x at 450, the court similarly distinguished *Alvarez* in holding that the statement, "I have the lawyer or something?" was ambiguous. ("This is distinctly different from the request, 'Can I get an attorney right now, man? followed by two more questions about the immediate availability of an attorney, as in *Alvarez* . . . .")

*Smith v. Endell*, 860 F.2d 1528, 1529 (9th Cir. 1988) is similarly distinguishable from the present case, as in *Alvarez*, there was not a single passing statement about whether the suspect could have an attorney, but a series of requests to specifically speak to an attorney. ("Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?") The same is true of *United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992)—the defendant specifically asked to speak to an attorney, and officers even understood it to be a request for counsel. *Id.* at 752 ("Perez wrote with certainty that de la Jara had asked to speak to an attorney: 'I told the agent who was standing outside the office that it sounded like DELAJARA was invoking his rights because he just asked to call his attorney'") (emphasis omitted).

There is simply no Ninth Circuit or California authority that clearly established that plaintiff's statement was an unequivocal request for counsel. Indeed, as noted, both Ninth Circuit and California courts have found similar statements to be equivocal, and hence insufficient to require termination of interrogation. Moreover, as we discuss, review of authority from other Circuits underscores the fact that there is no clearly established law in this area.

**2. Other Circuits have found similar statements to be ambiguous and hence insufficient to constitute an unequivocal request for counsel under *Davis*.**

As the Supreme Court has noted, qualified immunity is particularly appropriate when the Circuits are divided on an issue. *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). That is the situation here. The Ninth Circuit's decision here cannot be reconciled with multiple decisions in other Circuits finding similar statements to be equivocal.

Most specifically, it is directly contrary to *Dormire v. Wilkinson*, 249 F.3d at 805, where the Eighth Circuit held that "Could I call my lawyer?" was ambiguous, because a reasonable officer could have understood the suspect to be "merely inquiring whether he had the right to call a lawyer." Similarly, here, a reasonable officer could have understood the plaintiff to be merely inquiring whether he had the right to an appointed lawyer.

Federal appellate courts around the country have uniformly required unequivocal requests for counsel and rejected as ambiguous far more direct references to an attorney's services than what plaintiff asserted here:

- "I think I want a lawyer." *Diaz v. Senkowski*, 76 F.3d at 63.

- "How can I do [*sic*] get an attorney here." *Subdiaz-Osorio v. Humphreys*, 947 F.3d at 448.

- "I can't afford a lawyer but is there any way I can get one?" *Lord v. Duckworth*, 29 F.3d at 1220.

- "I might want to talk to an attorney" *United States v. Zamora*, 222 F.3d at 766.

- "I don't have a lawyer. I guess I need to get one, don't I?" and "I guess you better get me a lawyer then." *United States v. Havlik*, 710 F.3d at 821-22.

- "I want my lawyer. . . . [I]f you want this recorded, I want a lawyer present." *United States v. Mohr*, 772 F.3d 1143, 1145 (8th Cir. 2014).

- "[D]o you know any good attorneys?" *United States v. Kelly*, 329 F.3d 624, 627 (8th Cir. 2003).

Moreover, a survey of lower court decisions from across the country finding similar statements to be insufficient to constitute an unequivocal request for counsel, confirms appellants' entitlement to qualified immunity. If judges agree with their positon, appellants can hardly be deemed to be acting contrary to clearly established law:

*See United States v. Dixon*, No. 8:10–cr–135–T–30MAP, 2010 WL 5209359, at *4 (M.D. Fla. Nov. 18, 2010) ("Can I have my lawyer here while we talk" ambiguous as to ability or desire); *United States v. Gonzalez-Delgado*, 4:16-cr-259-AKK-TMP, 2017 WL 874571, at *3 (N.D. Ala. Feb. 7, 2017), report and recommendation adopted, No. 4:16-cr-0259-AKK, 2017 WL 840591, at *1 (N.D. Ala. Mar. 3, 2017) ("Well, if I can, I need first to talk to an attorney . . . and if not . . . before talking to you . . ." was ambiguous); *United States v. Lee*, No. 3:19-CR-00052 JD, 2019 WL 8012668, at *4 (N.D. Ind. Dec. 11, 2019), report and recommendation adopted, No. 3:19-CR-052 JD-MGG, 2020 WL 416265, at *4 (N.D. Ind. Jan. 27, 2020) ("I feel like I should have a lawyer" ambiguous); *United States v. Clark*, 746 F. Supp. 2d 176, 179, 185 (D. Me. 2010) (defendant did not unambiguously invoke his right to counsel where he said, "I guess this is where I have to stop and ask for a lawyer, I guess"); *Fraher v. Patrick*, No. EDCV 06-

1406-SVW (AGR), 2010 WL 532397, at *16-17 (C.D. Cal. Feb. 9, 2010) (concluding suspect did not "clearly assert her right to have counsel present" where she said, "Yes, I would like attorney I guess," which, after clarification by the officer, was followed by "[w]ell I'll tell you what I know"); *United States v. Cook*, No. 07-CR-6195 CJS, 2008 WL 728883, at *14 (W.D.N.Y. Mar. 17, 2008) (asking officer "'if he would be able to call an attorney'" equivocal); *United States v. Pelle*, No. CRIM 05-407 JBS, 2006 WL 2528552, at *7 (D.N.J. Aug. 31, 2006) ("I think you people should leave until I consult with my attorney" equivocal); *United States v. Eastman*, 256 F. Supp. 2d 1012, 1019 n.6 (D.S.D. 2003) ("Can I have a lawyer" not unambiguous invocation of right to counsel).

The panel decision is inconsistent with the decisions of the Supreme Court, existing Circuit authority, and the decisions of other Circuits. For this reason, either panel rehearing or rehearing en banc is warranted.

## CONCLUSION

For the foregoing reasons, appellants respectfully submit that the petition should be granted.

DATED: April 10, 2020

> GREINES, MARTIN, STEIN & RICHLAND LLP
>     Timothy T. Coates
>
> ORBACH HUFF SUAREZ & HENDERSON
>     Kevin E. Gilbert
>
> BY:    s/ Timothy T. Coates
> _____
>            Timothy T. Coates
> Attorneys for Defendants and Appellants DETECTIVES
> MICHAEL ARTEAGA, JEFF CORTINA, JOHN
> MOTTO and JULIAN PERE

# CERTIFICATE OF COMPLIANCE
[Case No. 18-56360]

I certify that, pursuant to Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6), this **APPELLANTS DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, AND JULIAN PERE'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC** is proportionately spaced using Microsoft Word in Times New Roman font, and has a typeface of 14 points or more, and, pursuant to Cir. R. 32-1 and Fed. R. App. P. 32(a)(7)(B), consists of 2,944 words.

   s/  Pauletta L. Herndon
   Pauletta L. Herndon

# APPENDIX

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 25 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ART TOBIAS, | No.    18-56245 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:17-cv-01076-DSF-AS |
| DANIEL EAST, | |
| Defendant-Appellant, | MEMORANDUM* |
| and | |
| CITY OF LOS ANGELES; et al., | |
| Defendants. | |

| | |
|---|---|
| ART TOBIAS, | No.    18-56360 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 2:17-cv-01076-DSF-AS |
| MICHAEL ARTEAGA; et al., | |
| Defendants-Appellants, | |
| and | |
| CITY OF LOS ANGELES; et al., | |
| Defendants. | |

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted October 15, 2019
Pasadena, California

Before: WARDLAW and COLLINS, Circuit Judges, and SETTLE,[**] District
Judge.

In these consolidated interlocutory appeals,[1] Los Angeles School Police

Officer Daniel East and Los Angeles Police Department Detectives Michael

Arteaga, Jeff Cortina, John Motto, and Julian Pere challenge the district court's

order denying them qualified immunity on Art Tobias's claims under 42 U.S.C.

§ 1983. We vacate in part, affirm in part, and reverse in part.

1.      "[O]fficers are entitled to qualified immunity under § 1983 unless (1)

they violated a federal . . . constitutional right, and (2) the unlawfulness of their

conduct was clearly established at the time." *District of Columbia v. Wesby*, 138

S. Ct. 577, 589 (2018) (internal quotation marks omitted). Our jurisdiction over

these interlocutory appeals turns on the collateral order doctrine, which permits

interlocutory review of whether the district court committed an error of law in

denying qualified immunity but not of whether it erred in finding a genuine dispute

---

[**]     The Honorable Benjamin H. Settle, United States District Judge for
the Western District of Washington, sitting by designation.

[1] We consolidate these appeals for purposes of decision.

2

of material fact. *Mitchell v. Forsyth*, 472 U.S. 511, 527–30 (1985); *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944–45 (9th Cir. 2017). We cannot adequately assess our jurisdiction without a clear understanding of the district court's basis for denying qualified immunity. *Maropulos v. Cty. of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) (per curiam).

Here, we cannot determine from the district court's order why it denied qualified immunity to Officer East on each of the causes of action asserted against him. The district court did not specifically mention East in its discussion of several of the causes of action or in its brief qualified immunity analysis. In fact, it is not clear whether the district court even analyzed some of the claims asserted against East. For example, the district court granted summary judgment in favor of Detective Motto on the claims arising from the interrogation because of his "limited involvement" in it. But while East was not even present at the interrogation, it appears that the district court's order left the interrogation-related claims against him intact.

We therefore vacate the denial of qualified immunity as to East and remand for the district court to reconsider, on a claim-by-claim basis, whether East is entitled to qualified immunity. We emphasize that the presence of disputed facts does not preclude a finding of qualified immunity. Instead, the district court should determine on remand whether the facts taken in the light most favorable to

Tobias show that East violated a clearly established constitutional right. *See Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014) (per curiam).

2.    On the claims against Detectives Arteaga, Cortina, Motto, and Pere (Defendants),[2] we have jurisdiction to determine whether the facts viewed in the light most favorable to Tobias show that Defendants violated Tobias's clearly established constitutional rights. *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016).

3.    Defendants appeal the district court's denial of qualified immunity solely with respect to Tobias's claims arising from his interrogation. The relevant causes of action in the operative complaint are (1) a Fifth Amendment claim arising from the use at Tobias's trial of inculpatory statements that allegedly (a) were taken in violation of Tobias's *Miranda* rights, and (b) were involuntary (Count I); (2) a Fourteenth Amendment substantive due process claim alleging that Defendants used interrogation techniques that "shocked the conscience" (Count II); and (3) a Fourteenth Amendment due process claim alleging, in part, that Defendants "fabricated evidence"—including, among other things, "the substance

---

[2] Detective Motto is an appellant only with respect to Tobias's fabrication-of-evidence claim. We use the generic term "Defendants" to refer to the appellants relevant to each claim—all four detectives for the fabrication-of-evidence claim and only Detectives Arteaga, Cortina, and Pere for the other claims.

of Plaintiff's oral confession" (Count III).[3]  We conclude that the district court

properly denied qualified immunity on the *Miranda* claim, but that it erred in

denying qualified immunity on all other interrogation-related claims.[4]

    a.    The district court correctly denied qualified immunity on Tobias's

claim that Defendants violated his Fifth Amendment right to counsel by continuing

his custodial interrogation after he requested an attorney and then using the

resulting confession against him in his criminal case.  *See Davis v. United States*,

512 U.S. 452, 458–59 (1994); *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

Tobias's statement—"Could I have an attorney?  Because that's not me"—was an

unequivocal invocation of his right to counsel under clearly established law.  *See*

*Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) ("Can I get an attorney right

now, man?" was unequivocal); *United States v. De la Jara*, 973 F.2d 746, 750 (9th

Cir. 1992) ("Can I call my attorney?" was unequivocal); *Smith v. Endell*, 860 F.2d

1528, 1529 (9th Cir. 1988) ("Can I talk to a lawyer?" was unequivocal).  The

immaterial fact that Tobias used "could" rather than "can" in requesting an

attorney does not make that request any less unequivocal, and no reasonable officer

---

[3] Count III also alleged a variety of additional misconduct other than the
fabricated confession, but Defendants challenge the district court's denial of
qualified immunity solely with respect to those issues relating to the interrogation.

[4] Judge Wardlaw dissents, *infra*, from the conclusion that the district court
erred in denying qualified immunity on any of the interrogation-related claims.

could conclude otherwise. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam).

b.     The district court erred in denying qualified immunity with respect to Tobias's claims that Defendants obtained and used an involuntary confession in violation of his Fifth Amendment right against self-incrimination and that Defendants violated Tobias's due process rights by using interrogation techniques that shock the conscience.

(i).     "A coercive interrogation exists when the totality of the circumstances shows that the officer's tactics undermined the suspect's ability to exercise his free will," *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (citation omitted), and a Fifth Amendment violation occurs when an officer coerces a suspect to provide a confession that is subsequently used in criminal proceedings against that suspect, *Crowe v. County of San Diego*, 608 F.3d 406, 430–31 (9th Cir. 2010). In determining whether a statement was involuntary, "[c]ourts . . . often consider the following factors: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). Even if Tobias's confession were to be deemed involuntary under these standards—a question we

do not reach—qualified immunity would still apply unless the facts available to the Defendants at the time they acted would have made clear to any reasonable police officer that Tobias's statement was involuntary. *See Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) ("qualified immunity analysis thus is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question") (quoting *White v. Pauly*, 137 S. Ct. 548, 550 (2017)); *see also City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any reasonable official in the defendant's shoes would have understood that he was violating it*.") (emphasis added) (citations and internal quotation marks omitted); *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009) (although Fifth Amendment claim requires subsequent use of statement in criminal proceedings, focus of § 1983 suit against officer is on the circumstances of the interrogation that preceded "turn[ing] over the allegedly coerced statements to prosecutors").

Tobias failed to meet this demanding standard. *See Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct."). Although the interrogating officers committed a clear-cut *Miranda*/*Edwards* violation, that fact alone is not sufficient to establish that the

resulting confession was involuntary.  *Bradford v. Davis*, 923 F.3d 599, 616 (9th Cir. 2019) ("statements taken in violation of *Edwards* … are not presumed to be involuntary by virtue of the *Edwards* violation alone").  Considered against the controlling precedent that has found coercion in custodial interrogation, the objective circumstances of Tobias's interrogation, viewed in the light most favorable to him, were not such that any reasonable police officer would have realized that the Fifth Amendment right against compelled self-incrimination was being violated.

Although Tobias was only 13 years old and his unequivocal request for counsel was improperly brushed aside, his early-evening interrogation lasted only 90 minutes, involved no physical threats or abuse, and otherwise relied on interrogation techniques that cannot be said, either singly or in the combination presented here, to have violated clearly established law (*e.g.*, bluffing about the strength of the evidence the officers had, arguing that the courts would go easier on the suspect if he confessed to what he had done, and shaming the suspect for the effect a prosecution would have on his family).  Although the question is a close one in light of the patent violation of Tobias's right to counsel, in our view Tobias has failed to show that the officers' conduct in the interrogation constituted impermissible coercion under clearly established law.

Like the Fourth Amendment prohibition of excessive force, the Fifth

Amendment protection against the use of involuntary statements at a criminal trial is one that involves "an area of the law 'in which the result depends very much on the facts of each case.'" *Kisela*, 138 S. Ct. at 1153 (citation omitted); *see Haswood*, 350 F.3d at 1027 (courts employ "no 'talismanic definition' of voluntariness," but instead consider the "totality of the circumstances" of the interrogation); *see also supra* at 6 (listing factors considered). Consequently, just as in excessive force cases, "[s]pecificity" is important here, because "'it is sometimes difficult for an officer to determine how the relevant legal doctrine'"—here, the law against coerced confession—"'will apply to the factual situation the officer confronts.'" *Kisela*, 138 S. Ct. at 1152 (citation omitted). As a result, a plaintiff seeking to defeat qualified immunity must establish that "*any* reasonable official in the defendant[s'] shoes would have understood" that the *particular* circumstances of the specific interrogation were impermissibly coercive under the then-existing case law. *Id*. at 1153 (citation and internal quotation marks omitted) (emphasis added); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (citation and internal quotation marks omitted).

Here, the particular circumstances of the interrogation do not present the same sort of confluence of features that we have previously held to be coercive.

*Cf.*, *e.g.*, *Taylor v. Maddox*, 366 F.3d 992, 1015–16 (9th Cir. 2004) (confession was clearly involuntary where 16-year-old suspect was arrested late at night, questioned until 3:00 AM, threatened with a jab to the face, and had his repeated requests for counsel denied), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014); *Gladden v. Holland*, 366 F.2d 580, 582 (9th Cir. 1966) (finding coercion where officers ignored a request for counsel but also conducted the interrogation "throughout the night" and called in alleged rape victims to view the suspect). On the contrary, they appear to be *less* coercive than other cases in which we have found that coercion had *not* been established. *See*, *e.g.*, *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (noting that coercion is not established where police merely indicate that a cooperative attitude would benefit a minor suspect); *Cunningham*, 345 F.3d at 810 (finding no coercion where interrogation went for eight hours without a break, officers continued to question the suspect after claims of innocence, and officers played on the suspect's fear of prison). Because it would not have been apparent to any reasonable officer that the circumstances of this specific interrogation were unconstitutional, the officers were entitled to qualified immunity on Tobias's claim that the officers violated his Fifth Amendment right against compelled self-incrimination.[5]

---

[5] Whether Tobias's remaining Fifth Amendment interrogation claim—that his statement was taken in violation of *Edwards* and used at a criminal trial—is

(ii).    The district court also erred in denying qualified immunity to the

detectives on the claim that the interrogation violated Tobias's Fourteenth

Amendment right to substantive due process.  *See Stoot*, 582 F.3d at 928.

Although this claim (unlike the Fifth Amendment claim) does not require a

showing that the confession was used against Tobias, "[t]he standard . . . is quite

demanding," requiring something akin to "police torture or other abuse" or

comparable conduct that "shocks the conscience."  *Id.* (citations and internal

quotation marks omitted).  For reasons similar to those discussed above with

respect to Tobias's coerced confession claim, we conclude that, even construing

the facts in the light most favorable to Tobias, he failed to show that any

reasonable officer would have understood that the objective circumstances of the

interrogation here met the demanding "shocks the conscience" standard.

The facts of this case are materially different from previous cases in which

we have found a substantive due process violation for police conduct during an

interrogation.  *See*, *e.g.*, *Cooper v. Dupnik*, 963 F.2d 1220, 1248–50 (9th Cir. 1992)

(en banc) (finding a substantive due process violation when officers subjected a

suspect to "hours of mistreatment and what can fairly be described as sophisticated

psychological torture" and intentionally ignored the suspect's repeated invocations

---

cognizable under § 1983 is not at issue in this interlocutory appeal, and we express
no view on it.

of his right to counsel and right to silence and for the express "purpose of making it difficult, if not impossible, for [the defendant] to take the stand in his own defense"), *overruled on other grounds*, *Chavez v. Martinez*, 538 U.S. 760, 773 (2003). Tobias's reliance on *Crowe*, 608 F.3d 406, is misplaced. *Crowe* is distinguishable because there, one of the boys interviewed was "in shock over his sister's brutal murder," and the boys were subjected to "hours and hours of interrogation" featuring "the most psychologically brutal interrogation and tortured confession" that one expert witness had ever observed. *Id*. at 431–32. Because controlling precedent does not establish "beyond debate" that the officers' conduct here shocks the conscience, the officers are entitled to qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

4.     Defendants also challenge the district court's denial of qualified immunity as to Tobias's fabrication-of-evidence claim (asserted under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc)), but only to the extent that the claim is based on the contention that Tobias's confession is the asserted fabricated evidence. Defendants are entitled to qualified immunity on this issue because we have held that coerced confession claims are not cognizable under a *Devereaux* fabrication-of-evidence theory. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1069–70 (9th Cir. 2012).

Each party shall bear its own costs.

**VACATED IN PART, AFFIRMED IN PART, REVERSED IN PART.**

FILED

FEB 25 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WARDLAW, Circuit Judge, dissenting in part:

I respectfully dissent from the majority's conclusion that the interrogation tactics used by Detectives Michael Arteaga, Jeff Cortina, and Julian Pere did not violate clearly established Fifth and Fourteenth Amendment law.[1]  The detectives in this case cursed at Art Tobias (then 13 years old), ignored his request for counsel, repeatedly told him that he looked like a "cold-blooded killer," falsely said that somebody had "given him up," shamed him for "dragging [his] family into this," promised him likely leniency if he confessed, and threatened him with a harsh sentence if he stayed silent.  After more than an hour of this treatment, Tobias broke down and confessed to a murder he did not commit.

"It has . . . long been established that the constitutionality of interrogation techniques is judged by a higher standard when police interrogate a minor." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010).  In *Crowe*, we held that officers committed a Fourteenth Amendment substantive due process violation when they "cajoled, threatened, lied to, and relentlessly pressured" two young teenagers into falsely confessing.  *Id.* at 432.  That is precisely what Detectives Arteaga, Cortina, and Pere did here.

---

[1] I concur in Sections 1, 2, 3(a), and 4 of the memorandum disposition.

1

*Crowe* clearly established that the detectives' conduct violated the Fourteenth Amendment. And in light of *Crowe*, every reasonable officer would also have understood that the interrogation tactics here were unconstitutionally coercive, in violation of the Fifth Amendment. For these reasons, I would affirm the district court's conclusion that Detectives Arteaga, Cortina, and Pere are not entitled to qualified immunity on the coercive interrogation and substantive due process claims.

# CERTIFICATE OF SERVICE
[Case No. 18-56360]

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5900 Wilshire Boulevard, 12th Floor, Los Angeles, California 90036.

I certify that on April 10, 2020, I electronically filed the foregoing **APPELLANTS DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, AND JULIAN PERE'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that each appellant in the case is represented by counsel who are registered CM/ECF users and will be served by the appellate CM/ECF system.

_s/ Pauletta L. Herndon_

Pauletta L. Herndon
