# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ART TOBIAS,

*Plaintiff-Appellee,*

*v.*

MICHAEL ARTEAGA, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Central District of California, No. 2:17-cv-1076 (Fischer, J.)

## BRIEF FOR AMICUS CURIAE
## THE CENTER ON WRONGFUL CONVICTIONS OF YOUTH
## IN SUPPORT OF APPELLEE'S PETITION FOR REHEARING

STEVEN A. DRIZIN
LAURA H. NIRIDER
BLUHM LEGAL CLINIC
NORTHWESTERN PRITZKER
   SCHOOL OF LAW
375 E. Chicago Avenue
Chicago, IL 60611

SETH P. WAXMAN
DREW VAN DENOVER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6800
seth.waxman@wilmerhale.com

ALAN E. SCHOENFELD
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

May 11, 2020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE ............................................................1

INTRODUCTION ........................................................................................2

ARGUMENT ...............................................................................................4

I.     LAW AND SCIENCE CLEARLY ESTABLISH THE UNIQUE
VULNERABILITY OF JUVENILES TO COERCIVE INTERROGATION
TACTICS ...........................................................................................4

II.    DEFENDANTS' TEXTBOOK COERCIVE TACTICS WERE CLEARLY
LIKELY TO OVERBEAR A THIRTEEN-YEAR-OLD CHILD'S WILL ......................7

     A.    Atmosphere Of Intimidation .................................................9

     B.    Denial Of Access To Counsel ...........................................10

     C.    Denial Of Access To Parents .............................................13

     D.    Threats And Promises .......................................................13

     E.    Lies, Deception, And Contamination.................................15

III.    THE PANEL MAJORITY UNDULY FOCUSED ON DURATION AND
PHYSICAL ABUSE............................................................................17

CONCLUSION .........................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bellotti v. Baird*, 443 U.S. 622 (1979) .......................................................5

*Blackburn v. Alabama*, 361 U.S. 199 (1960)...........................................17

*Bradford v. Davis*, 923 F.3d 599 (9th Cir. 2019)....................................12

*Collazo v. Estelle*, 940 F.2d 411 (9th Cir. 1991) (en banc) ....................3, 10, 11, 12

*Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992) (en banc)........................3, 11, 18

*Corley v. United States*, 556 U.S. 303 (2009)...........................................5

*Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) .............................4, 7

*Dickerson v. United States*, 530 U.S. 428 (2000) .....................................5

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ..............................................5

*Edwards v. Arizona*, 451 U.S. 477 (1981) ................................................10

*Fare v. Michael C.*, 442 U.S. 707 (1979) ..................................................10

*Frazier v. Cupp*, 394 U.S. 731 (1969) ....................................................15

*Gallegos v. Colorado*, 370 U.S. 49 (1962) .........................................5, 7, 11, 13, 17

*Graham v. Florida*, 560 U.S. 48 (2010) ...................................................5

*Haley v. Ohio*, 332 U.S. 596 (1948) .................................................5, 7, 11

*Henry v. Kernan*, 197 F.3d 1021 (9th Cir. 1999)......................................3, 8, 11, 12

*In re Art T.*, 234 Cal. App. 4th 335 (2015) ..............................................2

*In re State in Interest of Carlo*, 225 A.2d 110 (N.J. 1966)......................10

*In re Elias V.*, 237 Cal. App. 4th 568 (2015)...................................6, 15, 16

*In re Gault*, 387 U.S. 1 (1967)......................................................5, 7, 10, 11

*In re J.E.G.*, 476 A.2d 130 (Vt. 1984) ...................................................13

*In re J.F.*, 987 A.2d 1168 (D.C. 2010) .................................................16

*In re Jerrell C.J.*, 699 N.W.2d 110 (Wis. 2005) ....................................13

*J.D.B. v. North Carolina*, 564 U.S. 261 (2011) ...............................2, 5, 7

*Johnson v. Jones*, 515 U.S. 304 (1995) ..................................................14

*Miller v. Alabama*, 567 U.S. 460 (2012) .................................................5

*Miller v. Fenton*, 474 U.S. 104 (1985) ....................................................4

*Miranda v. Arizona*, 384 U.S. 436 (1966) ...........................4, 8, 9, 16, 18

*Moore v. State*, 30 A.3d 945 (Md. 2011) ................................................13

*Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019) ............2

*Oubre v. Woldemichael*, 800 S.E.2d 518 (Ga. 2017) ...........................13

*Payne v. Arkansas*, 356 U.S. 560 (1958) .................................................4

*People v. Neal*, 31 Cal.4th 63 (2003) ....................................................12

*People v. Thomas*, 8 N.E.3d 308 (N.Y. 2014) .......................................16

*Rodriguez v. McDonald*, 872 F.3d 908 (9th Cir. 2017) ..............3, 12, 12, 14, 16, 17

*Roper v. Simmons*, 543 U.S. 551 (2005)..................................................5

*State v. Rettenberger*, 984 P.2d 20 1009 (Utah 1999) ...........................16

*United States v. Harrison*, 34 F.3d 886 (9th Cir. 1994) ...........3, 8, 13, 14

*United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014)........................16

*United States v. Villalpando*, 588 F.3d 1124 (7th Cir. 2009) ................14

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004) ............................14

## STATUTORY PROVISIONS

42 U.S.C. § 1983 .......................................................................................4

# OTHER AUTHORITIES

Drizin, Steven A. & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. Rev. 891 (2004)................................................................................................6

Grisso, Thomas et al., *Juveniles' Competence to Stand Trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants*, 27 Law & Hum. Behav. 333 (2003)...........................................6

Kassin, Saul M. et al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3 (2010)................6, 8, 9, 15, 17

McMullen, Patrick M., *Questioning the Questions: The Impermissibility of Police Deception in Interrogations of Juveniles*, 99 Nw. U. L. Rev. 971 (2005)......................................................15

Meyer, Jessica R. & N. Dickon Reppucci, *Police Practices & Perceptions Regarding Juvenile Interrogation and Interrogative Suggestibility*, 25 Behav. Sci. & L. 757 (2007) ........................6

Nirider, Laura et al., *Gerald Gault, Meet Brendan Dassey: Preventing Juvenile False and Coerced Confessions in the 21st Century*, 41 Champion 28 (2017) ......................................................15

**INTEREST OF AMICUS CURIAE**[1]

The Center on Wrongful Convictions of Youth, part of Northwestern University Pritzker School of Law's Bluhm Legal Clinic, was founded in 2008 as the first organization in the United States dedicated to uncovering and rectifying wrongful convictions of children and adolescents. The Center represents individuals who were wrongfully convicted of crimes as juveniles, promotes legislative initiatives aimed at preventing wrongful juvenile convictions, and litigates across the country in cases involving the developmental issues that make juveniles more susceptible to harsh interrogation techniques and thus more likely to give false, coerced confessions.

The Center often participates as an amicus in cases challenging wrongful juvenile convictions, and courts look to the Center's submissions for expert knowledge and advocacy concerning the particular susceptibility of juveniles to coercive interrogation techniques and resulting false confessions. For example, the U.S. Supreme Court cited the Center's amicus brief in *J.D.B. v. North Carolina* to establish that the risk of false confession is "all the more troubling" and "all the

---

[1] No counsel for a party authored this brief in whole or in part, and no entity or person, other than amicus curiae and its counsel, made a monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

more acute" when the person being interrogated is a juvenile. 564 U.S. 261, 269 (2011).

## INTRODUCTION

This interlocutory appeal presents an important and prototypical example of police detectives using interrogation tactics, long known to be coercive, to induce a false confession from a thirteen-year-old child.[2] Detectives Michael Arteaga, Jeff Cortina, and Julian Pere extracted the confession from Art Tobias in 2012, resulting in Tobias's wrongful convictions for first-degree and attempted murder. Those convictions were vacated on appeal because the detectives had refused to honor Tobias's unequivocal request for an attorney. *See In re Art T.*, 234 Cal. App. 4th 335, 356 (2015). Tobias was not retried. He now sues to recover damages for, among other things, the detectives' use of coercion to obtain his involuntary confession. The district court denied qualified immunity on that claim, but a divided panel of this Court reversed.

Rehearing en banc is necessary to correct the panel majority's obvious doctrinal errors, two of which are particularly clear-cut. First, the panel majority erred in asserting that no clearly established law prevented the detectives from "arguing [to Tobias] that courts would go easier on [him] if he confessed," Pet.

---

[2] This brief "assum[es] all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019).

App. A32, when in fact this Court has long held that "there are *no* circumstances in which law enforcement officers may suggest that a suspect's exercise of the right to remain silent may result in harsher treatment by a court," *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994). Second, despite recognizing that Tobias's "unequivocal request for counsel was improperly brushed aside," Pet. App. A32, the panel majority ignored the long line of Ninth Circuit cases holding that officers' continued application of psychological pressure after a suspect has invoked his right to counsel renders any subsequent confession involuntary, *see, e.g.*, *Rodriguez v. McDonald*, 872 F.3d 908, 923-925 (9th Cir. 2017); *Henry v. Kernan*, 197 F.3d 1021, 1028 (9th Cir. 1999); *Cooper v. Dupnik*, 963 F.2d 1220, 1243 (9th Cir. 1992) (en banc); *Collazo v. Estelle*, 940 F.2d 411, 418 (9th Cir. 1991) (en banc). These and the numerous other errors identified in Tobias's petition call out for correction.

The techniques described above are clearly unlawful as applied to suspects of any age—but they are especially pernicious when used on a thirteen-year-old child. Supreme Court precedent has clearly established for decades that a heightened standard of voluntariness attaches to custodial interrogations of juveniles. That heightened standard is critical. Juveniles are unusually susceptible to even subtly coercive interrogative practices, and their confessions are disproportionately likely to lead to wrongful convictions. By condoning the clear

constitutional violations in this case, the panel majority diminished accountability for police officers, muddied the previously clear limits on juvenile interrogations, and increased the likelihood that young children like Tobias will confess to crimes they did not commit and spend years of their life in prison.

The Court should grant Tobias's petition for rehearing en banc.

## ARGUMENT

### I. LAW AND SCIENCE CLEARLY ESTABLISH THE UNIQUE VULNERABILITY OF JUVENILES TO COERCIVE INTERROGATION TACTICS

Coercive interrogation techniques violate the Constitution when the resulting confession is used against the suspect in a criminal proceeding, *e.g.*, *Payne v. Arkansas*, 356 U.S. 560, 561 & n.1 (1958) (collecting cases), making the interrogators potentially civilly liable, *see* 42 U.S.C. § 1983; *Crowe v. County of San Diego*, 608 F.3d 406, 430 (9th Cir. 2010).  A technique is coercive if, "as applied to *this* suspect," it makes the confession "unlikely to have been the product of a free and rational will."  *Miller v. Fenton*, 474 U.S. 104, 110, 116 (1985); *see also Miranda v. Arizona*, 384 U.S. 436, 464-465 & n.34 (1966) (doctrine "encompasses all interrogation practices which are likely to exert such pressure upon an individual as to disable him from making a free and rational choice").  The inquiry takes account of both "the details of the interrogation" and "the characteristics of the accused," with the extent of coercive pressure weighed

against the suspect's ability to withstand it. *Dickerson v. United States*, 530 U.S. 428, 434 (2000).

It follows that "special caution" is required when the interrogated person is a child. *In re Gault*, 387 U.S. 1, 45 (1967); *Gallegos v. Colorado*, 370 U.S. 49, 53 (1962); *Haley v. Ohio*, 332 U.S. 596, 599 (1948) (plurality opinion). "Even for an adult, … the pressure of custodial interrogation is so immense that it 'can induce a frighteningly high percentage of people to confess to crimes they never committed.'" *J.D.B.*, 564 U.S. at 269 (quoting *Corley v. United States*, 556 U.S. 303, 321 (2009)). And for juveniles—who by definition "'lack the [same] experience, perspective, and judgment'" and who are thus "'mo[re] susceptible to influence' and 'outside pressures'"—that risk is "all the more acute." *Id.* at 269, 272, 275 (quoting *Bellotti v. Baird*, 443 U.S. 622, 635 (1979); *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982); *Roper v. Simmons*, 543 U.S. 551, 569 (2005)); *see also id.* at 289 (Alito, J., dissenting) (caselaw "attuned" to the "reality" that juveniles are "more susceptible to police pressure than the average adult").

This "commonsense proposition[]" is borne out by social and cognitive science, *J.D.B.*, 564 U.S. at 273 n.5, on which the Supreme Court has often relied in accounting for the "fundamental differences between juvenile and adult minds," *Graham v. Florida*, 560 U.S. 48, 68 (2010); *see also, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 471-472 & n.5 (2012). "Basic research has shown that children and

- 5 -

adolescents are cognitively and psychosocially less mature than adults—and that this immaturity manifests in impulsive decision making, decreased ability to consider long-term consequences, engagement in risky behaviors, and increased susceptibility to negative influences." Kassin et al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3, 19 (2010); *see also In re Elias V.*, 237 Cal. App. 4th 568, 578-579 (2015) (collecting research); Plaintiff's Excerpts of Records ("PER") 423-452 (Expert Report of Dr. Leo) (same). This explains why "[a]dolescents are more likely than young adults to make choices that reflect a propensity to comply with authority figures, such as confessing to the police rather than remaining silent or accepting a prosecutor's offer of a plea agreement." Grisso et al., *Juveniles' Competence to Stand Trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants*, 27 Law & Hum. Behav. 333, 357 (2003). It is therefore unsurprising that juveniles are grossly overrepresented in proven false confession cases. Drizin & Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. Rev. 891, 944 (2004). Even police officers agree: in a 2007 survey, officers estimated that 10% of all interrogations resulted in a false confession. Meyer & Reppucci, *Police Practices & Perceptions Regarding Juvenile Interrogation and Interrogative Suggestibility*, 25 Behav. Sci. & L. 757, 770 (2007).

For these reasons, it has been clearly established law for decades that police interrogations of juveniles must satisfy a heightened standard of voluntariness: tactics that "would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens." *Gault*, 387 U.S. at 45 (mandating "special care" for interrogating teenagers, who "cannot be judged by the more exacting standards of maturity" (quoting *Haley*, 332 U.S. at 599)); *see, e.g.*, *Gallegos*, 370 U.S. at 53-55 (age the "crucial factor" in holding 14-year-old's confession coerced, where suspect was denied access to adults but there was "no evidence of prolonged questioning"); *Crowe*, 608 F.3d at 431 (officers in § 1983 suit clearly violated "higher standard" for juvenile interrogations where fourteen- and fifteen-year-old children "were isolated and subjected to hours and hours of interrogation during which they were cajoled, threatened, lied to, and relentlessly pressured by teams of police officers"); *see also J.D.B.*, 564 U.S. at 297 (Alito, J., dissenting) (agreeing that Supreme Court cases "already make clear" that "'special care' must be exercised in applying the voluntariness test where the confession of a 'mere child' is at issue").

## II. DEFENDANTS' TEXTBOOK COERCIVE TACTICS WERE CLEARLY LIKELY TO OVERBEAR A THIRTEEN-YEAR-OLD CHILD'S WILL

It should have been clear to anyone in the detectives' position that their chosen interrogation tactics would likely induce a thirteen-year-old child to break

and tell the detectives what they wanted to hear. Indeed, on Tobias's version of the facts, it is difficult to understand the detectives' actions as anything but a deliberate effort to induce Tobias's confession without regard for the truth. No meaningful evidence connected Tobias to the crime. And the principal evidence cut the other way: surveillance footage and eyewitness testimony identified the shooter as a six-foot-tall adult weighing 200 pounds—not a 4'10", 110-pound thirteen-year-old child. Nonetheless, the detectives assumed Tobias's guilt and exposed him to a battery of interrogation tactics developed for the sole purpose of overcoming the resistance of and inducing self-incriminating statements from hardened criminal *adults*. Kassin et al., 34 Law & Hum. Behav. at 6-7; *see* PER 428-431, 436-438.

Some of these tactics independently constituted clear constitutional violations as applied to suspects of any age. *See, e.g.*, *Henry*, 197 F.3d at 1027-1028 (deliberate denial of right to counsel); *Harrison*, 34 F.3d at 891 (threatened consequences for not confessing). And there is little doubt that using all of them in combination as applied to a thirteen-year-old child was "likely to exert such pressure upon the individual as to disable him from making a free and rational choice." *Miranda*, 384 U.S. at 464-465. As explained below, any reasonable officers would have understood this combination of conduct to violate Tobias's constitutional rights.

## A.    Atmosphere Of Intimidation

As the Supreme Court has recognized, "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will." *Miranda*, 384 U.S. at 469.  This is by design.  "It is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner," *id.* at 457, and even today "the single-minded purpose of interrogation is to elicit incriminating statements," typically by stoking the suspect's anxiety and despair until "the short-term benefits of confession" appear to "outweigh the long-term costs," Kassin et al., 34 Law & Hum. Behav. at 6-7, 14. Interrogators are accordingly trained to remove the suspect from familiar surroundings and isolate him in in a special interrogation room, which increases his anxiety and incentive to escape.  *Id.* at 7, 16.

The detectives took that approach here.  They began the interrogation by handcuffing thirteen-year-old Tobias in the interrogation room, where they left him in isolation for close to two hours.  Excerpt of Record ("ER") 106.  When the questioning began, the detectives took turns entering the room, sometimes in pairs, sometimes alone, displaying their firearms at all times.  ER 143; PER 448. Detective Arteaga extended the atmosphere of intimidation by screaming and swearing at Tobias, often inches away from his face, and at least once making physical contact.  ER 150-151.  Factors like these are coercive as an empirical

matter and, as any adult should know, can contribute to the conclusion that a confession has been unlawfully coerced. *See* PER 448 (leading police manual admonishes interrogators not to handcuff suspects or display firearms "because it will be conceived as coercive"); *Gault*, 387 U.S. at 54 n.93 ("[T]he 'frightening atmosphere' of a police station is likely to have 'harmful effects on the mind and will of the boy.'" (quoting *In re State in Interest of Carlo*, 225 A.2d 110, 118-119 (N.J. 1966))).

### B.    Denial Of Access To Counsel

The panel found a "patent violation of Tobias's right to counsel" when Tobias asked for an attorney and Pere flatly responded: "no." Pet. App. A32; *see* ER 148-149; *Edwards v. Arizona*, 451 U.S. 477, 482, 484-485 (1981) (*Miranda* protects the "right to have counsel present during custodial interrogation" and requires questioning to end immediately once the suspect invokes the right). That holding "not only has *Miranda* implications, but traditional voluntariness implications as well." *Collazo*, 940 F.2d at 418.

Even if Tobias had never asked for a lawyer, the mere fact that no lawyer was provided indicates coercion. "Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts." *Fare v. Michael C.*, 442 U.S. 707, 719 (1979). And that need for legal

protection is all the more acute when the suspect is a child. Even before *Miranda*, the Supreme Court deemed the absence of counsel to be a critical determinant of when a juvenile's confession has been coerced. *See Gault*, 387 U.S. at 55 ("If counsel was not present … , the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."); *Gallegos*, 370 U.S. at 55 (uncounseled confession involuntary because "[w]ithout some adult protection …, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had"); *Haley*, 332 U.S. at 304 ("A 15-year old lad … needs counsel and support if he is not to become the victim first of fear, then of panic.").

But Tobias *did* invoke his right to counsel. Under established Ninth Circuit law, where an officer "simply continues questioning … as if no request for counsel had been made," any resulting confession is necessarily involuntary—not in the prophylactic sense of *Miranda* but in the sense of not having been "the product of an essentially free and unconstrained choice." *Henry*, 197 F.3d at 1028 (emphasis omitted) (citing *Cooper*, 963 F.2d at 1243). As early as 1991, "[a]ny minimally trained police officer should have known such pressure was improper and likely to produce involuntary statements." *Id.* at 1028 (citing *Collazo*, 940 F.2d at 417); *see id.* at 1027-1028 (holding adult suspect's confession involuntary because officers

failed to acknowledge his request for counsel and interrogated him "for an hour"). It goes without saying that the principle applies with even greater force to youths. *See Rodriguez*, 872 F.3d at 925 ("[p]articularly in light of [the 14-year-old suspect]'s special vulnerabilities to coercion," the officers' "continu[ing] to pressure" him "[a]fter [he] asked for a lawyer" amounted to coercion that "overbore [his] will"); *People v. Neal*, 31 Cal.4th 63, 81-82 (2003) (confession involuntary where detective "intentionally continued interrogation" despite the 18-year-old suspect's invocation of his right to counsel). Because the detectives continued to pressure Tobias for more than "an hour" after denying his request for counsel, *Henry*, 197 F.3d at 1028, Tobias's confession was clearly involuntary.

The panel majority did not acknowledge the *Collazo/Cooper/Henry/ Rodriguez* line of cases, instead citing *Bradford v. Davis* for the idea that "a clear-cut *Miranda/Edwards* violation … alone is not sufficient to establish that the resulting confession was involuntary." Pet. App. A31-A32 (citing 923 F.3d 599, 616 (9th Cir. 2019)). But the point here is not that the denial of counsel *alone* demonstrates coercion; rather, coercion results when the denial is followed by the officers' continued efforts to pressure the suspect. *See Rodriguez*, 872 F.3d at 924; *Collazo*, 940 F.2d at 413-414. *Bradford* does not conflict with these cases. But to the extent it does, the en banc Court should take this opportunity to clarify the law.

## C.    Denial Of Access To Parents

For similar reasons, the detectives' three separate refusals to let Tobias speak to his mother support a finding of coercion.  ER 146, 149, 151; *see, e.g.*, *Gallegos*, 370 U.S. at 54 ("A lawyer or an adult relative or friend could have given the [14-year-old suspect] the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators."); *Oubre v. Woldemichael*, 800 S.E.2d 518, 524 (Ga. 2017) (parent's absence "is a significant factor"); *Moore v. State*, 30 A.3d 945, 955 (Md. 2011) ("youth" and the "denial of parental access" are "crucial" and "very important" factors, respectively); *In re Jerrell C.J.*, 699 N.W.2d 110, 118 (Wis. 2005) ("[W]e view the denial of [a 14-year-old]'s requests to talk to his parents as strong evidence of coercive police conduct."); *In re J.E.G.*, 476 A.2d 130, 132 (Vt. 1984) ("special caution" is "particularly" necessary when "the juvenile makes admissions without the presence of counsel, parent or other interested but independent adult").

## D.    Threats And Promises

The Ninth Circuit recognizes that it is inherently coercive to threaten a suspect with a harsher sentence if he or she does not confess.  *Harrison*, 34 F.3d at 891.  Indeed, "there are *no* circumstances in which law enforcement officers may suggest that a suspect's exercise of the right to remain silent may result in harsher treatment by a court"—even if the suspect is "unusually resistant to psychological

coercion." *Id.*; *see id.* at 890, 891-892 (finding coercion where an officer asked the suspect "whether she thought it would be better if the judge were told that she had cooperated," and the suspect was an educated 31-year-old woman with prior exposure to the criminal justice system who was in the comfort of her own home). Tobias, of course, was not "unusually resistant to psychological coercion"; he was "unusually vulnerable." *Rodriguez*, 872 F.2d at 923. Yet the district court still found that the detectives told him "that if he didn't confess the judge would give him a longer sentence," Pet. App. A12, and this Court must accept that finding on this interlocutory appeal, *see Johnson v. Jones*, 515 U.S. 304, 313 (1995). The detectives thus unmistakably violated the per se rule of *Harrison*, and Tobias's confession should be held clearly involuntary on that basis alone.

The detectives also violated the converse rule, in that they coerced Tobias to confess by promising him leniency. Whether or not such promises are inherently coercive, *see Harrison*, 34 F.3d at 886, they strongly indicate coercion as applied to children, *see, e.g.*, *Rodriguez*, 872 F.3d at 923 (finding coercion where "the officers suggested to [the 14-year suspect] that cooperation would result in leniency"); *see also United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009) ("[A] false promise has the unique potential to make a decision to speak irrational and the resulting confession unreliable."); *Williams v. Woodford*, 384 F.3d 567, 595 (9th Cir. 2004) (A "promise of leniency accompanied by threats or

other coercive practices constitutes improper influence and makes a subsequent inculpatory statement involuntary."). That distinction makes good sense. "Studies have also shown that [youth] are more likely to decide about waiver on the basis of the potential for immediate negative consequences—for example, whether they will be permitted to go home if they waive their rights—rather than considering the longer-range consequences associated with penalties for a delinquency adjudication." Kassin et al., 34 Law & Hum. Behav. at 8. "In short, it simply takes a lot less to realign the interrogation room incentives for a juvenile than for an adult," even when the juvenile is factually innocent. Nirider et al., *Gerald Gault, Meet Brendan Dassey: Preventing Juvenile False and Coerced Confessions in the 21st Century*, 41 Champion 28, 32 (2017).

### E.    Lies, Deception, And Contamination

Although lying to a suspect does not necessarily invalidate a confession, it remains "relevant" to the general voluntariness inquiry, *Frazier v. Cupp*, 394 U.S. 731, 739 (1969), and it "is significantly more indicative of voluntariness where, as here, the subject is a 13-year-old adolescent," *Elias V.*, 237 Cal. App. 4th at 593. Indeed, "[s]ocial science and biological research on juvenile decisionmaking provides strong support for the conclusion that juveniles, much more than adults, are vulnerable to police deception in interrogations." McMullen, *Questioning the Questions: The Impermissibility of Police Deception in Interrogations of Juveniles*,

99 Nw. U. L. Rev. 971, 992 (2005). For example, police deception contributed to a recent decision of this Court invalidating a fourteen-year-old's confession where the officers "repeatedly" lied to the suspect that other witnesses "had already implicated him in the crime," *Rodriguez*, 872 F.3d at 924 n.3, as the defendant detectives did to Tobias more than a dozen times, *see* PER439-440.

A related form of coercion occurs when the police subtly script the suspect's answers by feeding him details of the crime. The Supreme Court recognized the coercive nature of this tactic in *Miranda*, *see* 384 U.S. at 455, and courts have often found it "to be coercive and to have overcome the will of subjects, particularly those who are young or otherwise vulnerable," *Elias V.*, 237 Cal. App. 4th at 592; *see, e.g.*, *People v. Thomas*, 8 N.E.3d 308, 317 (N.Y. 2014); *In re J.F.*, 987 A.2d 1168, 1177 (D.C. 2010); *State v. Rettenberger*, 984 P.2d 20 1009, 1020 (Utah 1999). Two recent Ninth Circuit cases—both involving juveniles— invalidated confessions where this type of contamination took place. *See Rodriguez*, 872 F.3d at 924 n.3 ("The officers then proceeded to feed Mr. Rodriguez details about the shooting."); *United States v. Preston*, 751 F.3d 1008, 1024 (9th Cir. 2014) (officers applied "repeated pressure to change answers inconsistent with guilt and adopt answers evidencing guilt instead"). The detectives here fed Tobias nearly every detail of the case, PER 449-550, accusing

him of lying until he "changed his story to fit the officers' narrative," *Rodriguez*, 872 F.3d at 924 n.3.

## III. THE PANEL MAJORITY UNDULY FOCUSED ON DURATION AND PHYSICAL ABUSE

Notwithstanding the use of these clearly coercive techniques, the panel majority denied qualified immunity in part because it unduly focused on the length of Tobias's interrogation (105 minutes of handcuffed isolation and 90 minutes of questioning). ER 106; *see* Pet. App. A32. If anything, that interrogation was empirically on the long side. "[T]he vast majority of interrogations last approximately from 30 minutes up to 2 hours." Kassin et. al., 34 Law & Hum. Behav. at 16. And the law is clear that, though length of the interrogation can be relevant, it is not alone dispositive. *See, e.g.*, *Gallegos*, 370 U.S. at 53-55 (age was the "crucial factor" in holding 14-year-old's confession to be involuntary where suspect was denied access to adults but there was "no evidence of prolonged questioning"). In any event, to the extent the interrogation could be considered "short," that characterization only demonstrates the ease with which the tactics described above overwhelmed Tobias's will.

The panel majority also gave undue weight to the lack of physical violence. *See* Pet. App. A32. But as cases have clearly recognized for decades, "coercion can be mental as well as physical." *Blackburn v. Alabama*, 361 U.S. 199, 206

(1960); *see also Cooper*, 963 F.2d at 1247 ("[I]t could hardly be clearer [that] pressuring a suspect to talk can be impermissibly coercive, even if no physical brutality is used."). The fact that the detectives did not go so far as to physically attack Tobias does not render the psychological pressure they did use any less coercive.

At bottom, thirteen-year-old Art Tobias did something that few adults and even fewer juveniles do: he exercised his right to counsel during his interrogation. By continuing to interrogate Tobias, investigators violated one of *Miranda*'s clearest directives: "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474. But investigators did not stop. They proceeded to interrogate Tobias as if he were a seasoned adult criminal, ignoring Tobias's repeated requests to speak to his mother, lying to him about the evidence, and cursing and raising their voices at him while threatening him with harm if he did not confess and promising him leniency if he did. They took no "special care" with Tobias. Instead they threw all caution—and well-established law—to the wind. As a result of that recklessness, they forfeited their qualified immunity.

## CONCLUSION

Tobias's petition for rehearing should be granted.

Respectfully submitted,

/s/ Seth P. Waxman

STEVEN A. DRIZIN                     SETH P. WAXMAN
LAURA H. NIRIDER                     DREW VAN DENOVER
BLUHM LEGAL CLINIC                   WILMER CUTLER PICKERING
NORTHWESTERN PRITZKER                    HALE AND DORR LLP
    SCHOOL OF LAW                    1875 Pennsylvania Avenue, NW
375 E. Chicago Avenue                Washington, D.C. 20006
Chicago, IL 60611                    (202) 663-6800

                                     ALAN E. SCHOENFELD
                                     WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                     7 World Trade Center
                                     250 Greenwich Street
                                     New York, NY 10007

May 11, 2020

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 29(a)(4)(G) and 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Ninth Cir. R. 29-2(c)(2).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 4195 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C)(i), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Seth P. Waxman
SETH P. WAXMAN

May 11, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Seth P. Waxman

SETH P. WAXMAN